## 70440. MOORE v. THE STATE.
(339 SE2d 271)

BEASLEY, Judge.

In January 1974 Moore was convicted of kidnapping, motor vehicle theft, two counts of armed robbery, and aggravated assault. Consecutive sentences were imposed: ten years imprisonment for kidnapping, five years for theft, fifteen and seventeen years for robbery charges, and ten years for aggravated assault.

On June 20, 1984 upon habeas corpus petition and hearing, the court ordered a new trial on the aggravated assault and motor vehicle theft charges because the record showed that one had been granted but never held. The habeas court also granted defendant's motion to file this out-of-time appeal as to the kidnapping and armed robbery convictions. Defendant pro se filed a timely notice of appeal from the 1984 habeas corpus order and a renewed notice reiterating the first. However, he apparently meant to appeal from the convictions and sentences of 1974 because counsel thereafter amended the notice and substituted language and case numbers indicating an appeal as allowed by the habeas court. Most of the record of the criminal case was sent up at appellant's request for the entire record, a copy of the final order in the habeas corpus proceeding showing authority for the

late appeal was included.

"In every matter coming to this court we are required to examine the record to make certain that we possess jurisdiction. [Cits.] . . . The timely filing of a notice of appeal in accordance with the statutory requirement is essential to confer jurisdiction upon an appellate court. [Cits.] A person convicted of crime in a trial court in this state is not entitled to have his conviction reviewed as a matter of right by an appellate court. He must pursue applicable statutory requirements. [Cit.]" *Mitchell v. State*, 157 Ga. App. 181, 182 (1) (276 SE2d 864) (1981). However, this court for proper reasons will entertain an out-of-time appeal. *Mobley v. State*, 162 Ga. App. 23 (1) (288 SE2d 702) (1982). For example, "[a] failure to advise a defendant of his right to appeal will require the grant of an out-of-time appeal." Id. "In like manner, the right to appeal is violated when the appointed lawyer deliberately foregoes the direct appeal without first obtaining his client's consent . . ." *Thornton v. Ault*, 233 Ga. 172, 174 (210 SE2d 683) (1974).

The court in granting the out-of-time appeal found that although "the Petitioner was in fact advised of his appellate rights, nonetheless . . . [he] was denied his right to appeal." The court did not elaborate further. Because we have no transcript of the hearing or any records in the habeas case other than the final order, we must assume the trial court's grant of the out-of-time appeal was proper. *Smith v. State*, 160 Ga. App. 26 (285 SE2d 749) (1981). The record of the criminal case does show that an appeal was attempted by defendant pro se but became frustrated.

1. Defendant first asserts the trial court gave a confusing and misleading charge and stated an opinion as to what had been proven in the case.

When exceptions were solicited by the trial court at the end of the charge, defense counsel made no objection, nor did he preserve the right to object. Thus, this enumeration is deemed waived. *Ferguson v. State*, 165 Ga. App. 283 (299 SE2d 761) (1983); *Brown v. State*, 171 Ga. App. 70 (1) (318 SE2d 498) (1984). Moreover, of those portions of the charge now challenged by defendant, most are not even relevant to the present appeal; they relate to the assault and motor vehicle theft convictions for which defendant has already been granted a new trial. With regard to those portions applicable to the present appeal, the trial court did not comment on the evidence but merely attempted to clarify the law as it related to the case. The charge was not so confusing and misleading so as to constitute reversible error.

2. Defendant next asserts that he was ineffectively represented at trial by counsel in violation of his rights under both the United States Constitution and the Georgia Constitution. This issue was not raised

below and for that reason we shall not address it here. *Moore v. State*, 254 Ga. 525, 532 (6) (330 SE2d 717) (1985); *Elliott v. State*, 253 Ga. 417, 420 (2b) (320 SE2d 361) (1984); *Gardiner v. State*, 252 Ga. 422, 423 (2) (314 SE2d 202) (1984); *Williams v. State*, 251 Ga. 749, 809 (20) (312 SE2d 40) (1983); *Brown v. State*, 251 Ga. 598, 600 (3) (308 SE2d 182) (1983); *Simpson v. State*, 250 Ga. 365, 367 (2) (297 SE2d 288) (1982). This court's function is to review errors of the lower courts, not to review assertions of error made by counsel and brought directly to this court. As pointed out in *Williams*, supra, a reason for declining to consider the matter brought first to this court is that trial counsel was not heard on the issue by the trial court, in that case at the motion for new trial hearing. In *Brown*, supra, the same reason was advanced; the record failed to show that the issue was raised, heard, or ruled on by the trial court. It can be raised in a motion for new trial. *Gardiner* and *Simpson*, supra. Again, *Simpson* speaks of the importance of hearing from trial counsel on the charge against his performance. We cannot do so at this time. Although the final order of the habeas court shows that it considered an assertion of ineffective assistance, heard from trial counsel on it, and concluded that counsel was not ineffective, that order was not appealed. Moreover, even if it had been, it did not embrace the complaints now made. According to the order, the habeas petition targeted trial counsel's representation in connection with resentencing, the motion for new trial, and the appeal; here the complaints relate exclusively to the trial itself and the pretrial rather than posttrial proceedings.

3. Appellant next suggests error in the admission of the statement of co-defendant Chambers to the police out of Moore's presence and tending to incriminate Moore. This, he says, violated his Sixth and Fourteenth Amendment right to confrontation as well as the statutory prohibition against the confession of one joint offender, made after the enterprise is ended, being admissible only against that offender. OCGA § 24-3-52. He also says the court erred in giving no curative instructions in this regard, but none were asked for. With respect to the federal constitution, he relies on *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968).

This case differs materially from *Bruton*, rendering its rules not transgressed. The officer, Lt. Reiser, related what Chambers began to tell him regarding the criminal events when he interviewed him at the police station shortly after his arrest. All references to Chambers' companions were to "two others" and "two other subjects" and "somebody"; no mention was made of the identification of either of these two individuals by name or in any other way. Their names were, in effect, redacted by the testifying officer, even assuming that the specific names were given by Chambers in the first place. See *Fortner v. State*, 248 Ga. 107, 108-109 (281 SE2d 533) (1981).

More importantly, the situation concerning the interview made the recitation by the officer harmless in this regard. When Chambers told him a shot had been fired, the officer terminated the interview and sent out an alert to look for a wounded person. Then Moore was brought into the interview and a joint interview was conducted. Earlier Moore, after having been advised of his rights, had given a statement to another detective in which he said one of the others had shot the service station attendant.[1] When both defendants were together, Moore "related the same story Chambers had told me singly," and each confirmed what the other said as to the whole series of events. The joint interview in which Moore participated brought forth a greater elaboration and more details concerning what Chambers had earlier stated individually. Thus there was ultimately no violation of the federal right of confrontation or the Georgia statutory right. As counsel stated during the discussion regarding the statements: "From the point on that he got these two defendants together and so forth, why I think, of course, may be subject to admission."

In the circumstances of this case, there was even more opportunity for protection of defendant's rights because of his presence and participation in the interview and thus first-hand knowledge of what Chambers said. " '[W]here the testimony presented in the co-defendant's confession is supported by the complaining defendant's own confession, there is no violation of appellant's right of confrontation. [Cits.]' [Cits.]" *Yeargin v. State*, 164 Ga. App. 835, 837 (4) (298 SE2d 606) (1982). "[T]here is no *Bruton* violation when the testimony presented in the co-defendant's confession is supported by the complaining defendant's own confession." *Matthews v. State*, 167 Ga. App. 28, 30 (305 SE2d 846) (1983). The court in *Matthews* also found no violation of the statute, under these circumstances. Likewise we find none here, where defendant not only jointly and simultaneously made the confession but also repeated what his co-defendant had said outside of his hearing.

4. Defendant next contends that his statements were improperly admitted at trial because they were the product of an illegal arrest. Defendant raises this argument for the first time on appeal. He cannot now complain. *Hance v. State*, 245 Ga. 856, 863 (5) (268 SE2d 339) (1980).

Defendant also argues that the statements were inadmissible under OCGA §§ 24-3-50 and 24-3-53 as well as under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution because they were involuntarily made under threat of bodily injury.

The evidence reflects the following: While a policeman attempted

---

[1] That statement had been admitted into evidence before officer Reiser testified.

to frisk defendant upon apprehension, defendant spun around attempting to grab the officer's revolver. A fight ensued, and the gun discharged, bouncing off of the patrol car. When the officer "got the upper hand" on defendant, he "bounced his head off the top of the car and shoved him inside the police unit." After being advised of his rights, defendant relayed the names of the other men involved and where one of the men lived. He then showed the officer where the shotgun used during the offenses could be found. Later, when questioned, defendant was twice more advised of his rights. He signed a waiver of those rights and, as referred to earlier, provided a more comprehensive statement of confession than that which he had given while in the patrol car.

The trial court determined the voluntariness of these admissions outside the presence of the jury as required by *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964). On appellate review, such a determination must be accepted unless it is clearly erroneous. *Worley v. State*, 166 Ga. App. 794 (2) (305 SE2d 485) (1983); *Rounds v. State*, 166 Ga. App. 212, 213-14 (2) (303 SE2d 543) (1983). The trial court's admission of defendant's oral statements contained in the testimony of police witnesses was not clearly erroneous.

5. Lastly, defendant challenges the sufficiency of the evidence.

"A person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against his will." OCGA § 16-5-40.

"A person commits the offense of armed robbery when, with intent to commit theft, he takes property of another from the person or the immediate presence of another by use of an offensive weapon . . ." OCGA § 16-8-41.

The state's witnesses testified as follows: Defendant approached victim Lloyd at a phone booth outside of a laundromat. Pointing a shotgun at Lloyd, he ordered the victim to hang up the phone and to get in Lloyd's car. Defendant and two other men also got in the car. The offenders took Lloyd's wallet, sixty dollars and his watch, the shotgun still pointed at Lloyd's head. They drove to a cemetery, helped the victim out of the car, ordered him to lie face down, tied him up and left in Lloyd's car. From there the offenders then went to a gas station where they ordered a gas station attendant at gunpoint to give them money. The attendant gave them about ninety dollars.

Defendant was apprehended while attempting to jump a seven or eight-foot fence after abandoning Lloyd's car. His own statements to the police corroborated the above testimony, as did statements by co-defendant Chambers.

Upon a review of the record and transcript, we find the evidence was sufficient for a rational trier of fact to find defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC

2781, 61 LE2d 560) (1979).
  *Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED OCTOBER 23, 1985 —
REHEARING DENIED NOVEMBER 20, 1985.

Johnny Moore, *pro se.*
G. *Terry Jackson*, for appellant.
*Spencer Lawton, Jr.*, District Attorney, *David T. Lock*, Assistant
District Attorney, for appellee.