## A10A2142. PAUL v. THE STATE.
(707 SE2d 171)

ADAMS, Judge.

A jury convicted Jessie Lamar Paul of one count of riot in a penal institution under OCGA § 16-10-56, and he appeals following the denial of his motion for new trial.

Paul was charged with committing the offense of riot in a penal institution[1] in that on or about October 7, 2005, while legally confined in the Harris County jail, he "did unlawfully act in a violent and tumultuous manner, to-wit: gouging the eye of Ryan Anthony Lett with his, the accused's, thumb. . . ." The evidence at trial showed that Paul and Lett, a jail trustee, began arguing during lunchtime at the jail. The argument led to a "wrestling match." Lett stated that he and Paul pulled and pushed each other around, but he did not recall that any punches were thrown. His eye was injured during this incident, leaving it red, bloodshot and a little swollen. He was taken to a medical center outside the jail, but he said that the medical personnel there just looked at his eye and did not administer any further treatment.

Corrections Officer John Johnston testified that he was working at the jail that day when he was notified that there was a fight. When Johnston arrived at the scene, he removed Lett from the area and observed that he had a cut on his eye and/or eyelid. Johnston recalled that emergency medical personnel (EMTs) were called. Another corrections officer, Corporal Jacqueline Terry, testified that when she took Lett to get medical treatment at the jail, she observed that he had "a cut over his eye and a little bit of bleeding and it was bruised." Lett told Terry that Paul's thumb made contact with his eye. Medical personnel in the jail cleaned Lett's eye and summoned the EMTs. Afterward, he was placed in a cell to await transportation for further treatment. Later, Paul showed Terry that he had broken his thumb some time ago, so that it now stuck out in one direction. He also asked Terry how Lett looked after the fight.

Sergeant James Bentley, a third corrections officer, testified that he saw Lett on the day of the fight and took photographs of his injuries. Lett told Bentley that Paul's thumb made contact with his

---

[1] Paul was also indicted for aggravated assault in connection with this incident, but the jury acquitted him of that charge.

eye. Bentley stated that after a period of time, Lett's eye worsened until it became "completely swollen shut," and the area under his eye was "completely blue to black." Approximately one week later, when he was able to open his eye, it was "completely red for quite a long time." Lett was transported to another facility for further treatment because the EMTs could observe that his eyelid was cut, but could not tell whether his eye was also cut. Lett was given Neosporin for his eye because stitches were not an option due to the location of the injury. Bentley also saw Paul the day of the fight. Paul asked Bentley and another officer, "Did I put his eye out? Did I swell it shut?" Paul then stated that he "bet" Lett would not talk about Paul's wife anymore. Bentley also observed Paul's thumb that day. Paul told Bentley that his thumbnails were a little long and that his thumb had been broken, so that it was a little offset.

1. Paul asserts that the trial court erred in instructing the jury that they could consider the Harris County jail a penal institution. Paul argues that the issue of whether the jail was a penal institution under OCGA § 16-10-56 was for the jury to decide, and thus the trial court violated OCGA § 17-8-57.[2] We agree.

Before trial, Paul's attorney expressed his willingness to stipulate to the fact that Paul was "legally confined" at the time of this incident, but he "would not be able to say . . . that he was legally confined to a penal institution." The trial court then admitted a certified copy of the bench warrant for Paul's arrest as State's Exhibit 1 in connection with the issue of Paul's confinement. And on direct examination, Bentley testified that the Harris County jail housed prisoners for pretrial confinement, probation violations and for a short time following a conviction until a prisoner is transferred to another facility.[3] He stated that the jail was a penal institution, without a defense objection. But when the State asked Bentley whether Paul was "in your penal institution, the Harris County Jail," on October 7, 2005, Paul's counsel objected to the State's characterization of the jail as a penal institution. Counsel argued that the State was required to prove and "it is for the jury to determine, whether or not it's a penal institution, or this Court." The trial court sent the jury out. After hearing argument on the issue, the trial court determined that the question presented an issue of law for the court and that he was ruling that the jail was a penal institution under the statute. The trial court informed the jury upon

---

[2] OCGA § 17-8-57 states that "[i]t is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused."

[3] Johnston also testified that the Harris County jail is where people in Harris County go to wait for their trial or go after they are sentenced.

their return that he had overruled Paul's objection and "you may consider the Harris County Jail as a penal institution."

OCGA § 16-10-56 (a) provides, in pertinent part, that "[a]ny person legally confined to any penal institution of this state or of any political subdivision of this state who commits an . . . act in a violent or tumultuous manner commits the offense of riot in a penal institution." Thus, to establish this offense as alleged in the indictment, the State was required to show (1) that Paul was legally confined at the time of the incident; (2) that the Harris County jail was a penal institution of a political subdivision of the state; and (3) that Paul committed an act in a violent and tumultuous manner by gouging Lett's eye with his thumb. Accordingly, whether the jail constituted a penal institution was an element of the offense.

In its order denying Paul's motion for new trial, the trial court found that it had not violated OCGA § 17-8-57 because its direction to the jury on this issue was not a comment on the evidence, but rather "merely an attempt to clarify the law as it related to the case."[4] (Punctuation omitted.) Moreover, the trial court asserted that "[t]o violate the statute, the comments must focus on a disputed issue of fact,"[5] and no issue of fact existed as to whether Paul was incarcerated in the Harris County jail.

The trial court's direction, however, went beyond clarifying the law on a particular issue; it involved applying the law to the evidence to draw a conclusion on an element of the State's case. We know of no statute that provides, or any appellate decision that holds, that every county jail is a "penal institution" as a matter of law. Compare, e.g., *State v. Nejad*, 286 Ga. 695, 700 (2) (690 SE2d 846) (2010) (firearm is a deadly weapon as a matter of law). And while the trial court correctly found that a violation of OCGA § 17-8-57 requires a finding that the court commented on a disputed issue of fact,[6] it erred in concluding that no issue of fact existed here. Paul's counsel certainly contested the issue when he refused to stipulate that Paul was confined in a penal institution. Cf. *Jones v. State*, 272 Ga. 900, 901-902 (2) (537 SE2d 80) (2000) (venue challenged whenever defendant pleads not guilty to the crime charged). Thus, it was incumbent upon the State to prove that the Harris County jail was a penal institution.

We acknowledge that a trial court possesses latitude in limited circumstances to address the application of the law to the facts in a criminal case. On a motion for directed verdict, for example, the

---

[4] Quoting *Moore v. State*, 176 Ga. App. 882, 883 (1) (339 SE2d 271) (1985).

[5] Citing *Smith v. State*, 275 Ga. App. 60, 63 (4) (619 SE2d 694) (2005).

[6] *State v. Gardner*, 286 Ga. 633, 634-635 (690 SE2d 164) (2010).

court could determine whether the State had submitted sufficient evidence to justify a finding by the jury that the jail was a penal institution. But the ultimate question of whether the State had properly established that element remains for the jury. See *Graham v. State*, 275 Ga. 290, 292 (2) (565 SE2d 467) (2002) (discussing venue). See also *Smith v. State*, 275 Ga. App. 60, 63 (4) (619 SE2d 694) (2005) (trial judge's explanation of ruling of partial directed verdict as to certain evidence did not constitute improper comment on the remainder of evidence).

Thus, the question of whether the Harris County jail qualified as a penal institution under OCGA § 16-10-56 was properly for the jury,[7] and the trial court violated OCGA § 17-8-57 in determining the issue as a matter of law.[8] See *Patel v. State*, 282 Ga. 412, 414 (2) (651 SE2d 55) (2007) (trial court's comment that "[v]enue is proper in Fayette County" was improper expression of opinion on essential element of venue under OCGA § 17-8-57). "In light of the mandatory nature of the statute and the case law interpreting the statute, we must reverse [Paul's] conviction and remand the case to the trial court for a new trial."[9] (Citation and punctuation omitted.) *Chumley v. State*, 282 Ga. 855, 858 (2) (655 SE2d 813) (2008).

2. Paul next asserts that the trial court erred in allowing the charge of riot in a penal institution to go to the jury. He asserts that the evidence was insufficient to convict Paul of the offense as alleged in the indictment because the State failed to prove that Paul gouged Lett's eye.

The term "gouge" is defined in Webster's New World College Dictionary (2010 ed.), "in fighting [to mean] to push one's thumb into the eye of." The American Heritage English Dictionary (4th ed. 2010) defines the term to mean "to thrust one's thumb into the eye of." The State presented evidence from which the jury could have concluded that while Paul was wrestling with Lett, Paul's thumb made contact with Lett's eye, cutting his eyelid, and perhaps his eye, and resulting in bleeding and bruising around the eye. Lett's eye was swollen closed for about one week and was red afterward. Addition-

---

[7] Even though the trial court had already decided the issue, the court, in fact, charged the jury on the meaning of "penal institution" as that term is defined under OCGA § 42-1-5 (a) (3). See n. 10, infra.

[8] Moreover, the trial court erred in overruling Paul's objection to Bentley's testimony characterizing the jail as a penal institution. That objection should have been sustained as the prosecutor's question sought to have the witness invade the province of the jury. See *Shafer v. State*, 285 Ga. App. 748, 750 (1) (647 SE2d 274) (2007); *Tittle v. McCombs*, 129 Ga. App. 148, 149 (4) (199 SE2d 363) (1973).

[9] Contrary to the trial court's assertion in its order, an argument under OCGA § 17-8-57 is not subject to waiver, as a violation of the statute "will *always* constitute 'plain error.' " (Emphasis in original.) *State v. Gardner*, 286 Ga. at 634. And OCGA § 17-8-57 mandates reversal where an appellate court determines that the trial court violated the statute.

ally, the evidence indicated that Paul was aware that he had hurt Lett with his thumb, as he showed it to several officers, noting its unusual angle and his long fingernail. After the fight, Paul asked Bentley if he had put Lett's eye out. This evidence was sufficient to allow a jury to conclude that Paul had gouged Lett's eye as alleged in the indictment.

In addition, the State introduced evidence of Paul's legal confinement, a fact to which Paul's counsel was willing to stipulate. And the State's evidence regarding the prisoners housed at the Harris County jail would have been sufficient for the jury to conclude that it constituted a penal institution within the meaning of OCGA § 16-10-56, and as defined in the jury charge, had the trial court not ruled on that issue as a matter of law.[10] Accordingly, the evidence was sufficient for a reasonable factfinder to find beyond a reasonable doubt that Paul committed the offense of riot in a penal institution. See *Burge v. State*, 243 Ga. App. 673 (534 SE2d 132) (2000).

3. Paul also asserts that the trial court erred in charging the jury that "[a]ny person legally confined to any penal institution of this state, or of any political subdivision of this state, who did unlawfully act in a violent or tumultuous manner commits the offense of riot in a penal institution."[11] He asserts that this charge "impermissibly broadened the authorization of the jury to convict him in a manner not alleged in the indictment."

But the language of the charge merely tracks the relevant portion of the statute. And even if the charge could somehow be interpreted as broadening the jury's authorization, the trial court also specifically instructed the jury that Paul could not be convicted unless each element of the crime "as charged" was proved beyond a reasonable doubt and that the State bore the burden of proving "every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt." Accordingly, considering the charge as a whole, we conclude that the trial court fairly instructed the jury that it could convict Paul only if the State proved its case as charged in the indictment. See *Grant v. State*, 257 Ga. App. 678, 683 (2) (b) (572 SE2d 38) (2002).

*Judgment reversed and case remanded. Smith, P. J., and Mikell, J., concur.*

---

[10] "Penal institution" is defined under OCGA § 42-1-5 (a) (3) to mean "any place of confinement for persons accused of or convicted of violating a law of this state or an ordinance of a political subdivision of this state." Although this definition comes from the statute governing use of an inmate for private gain, we find that the trial court properly adopted this definition in charging the jury in connection with the charge of riot in a penal institution.

[11] We address this issue on appeal, as it may arise in the re-trial of this case.

DECIDED MARCH 8, 2011.

*Bentley C. Adams III, Robert L. Wadkins*, for appellant.
*Julia Fessenden Slater, District Attorney, Jennifer E. Dunlap,
Assistant District Attorney*, for appellee.