304 Ga. 122
FINAL COPY

S18A0035. WILLIS v. THE STATE.

BENHAM, Justice.

Leroy Willis was found guilty of murder, rape, and other charges arising out of the strangulation death of a victim whose body was discovered in the parking lot of a tire company where Willis had previously been employed and where he frequently slept.[1] For the reasons set forth herein, we affirm Willis's convictions.

---

[1] The crimes occurred between the dates of May 21, 1996 and May 23, 1996. On November 2, 2007, a Fulton County grand jury returned an indictment charging appellant with malice murder; felony murder (rape); felony murder (assault by beating the victim and by strangling her with a ligature); rape; assault by beating the victim with his hands; and assault by strangling the victim with a ligature. Following a jury trial conducted between March 24 and March 30, 2011, the jury returned a guilty verdict on all counts. Pursuant to a modified sentence entered on April 11, 2016, appellant was convicted and received concurrent life sentences with the possibility of parole for the guilty verdict on the murder charge and the guilty verdict on the rape charge. The felony murder convictions were vacated as a matter of law, and the convictions on the two guilty verdicts for the aggravated assault charges merged with the murder conviction. Appellant filed a timely motion for new trial on April 13, 2011, which was later amended. Following a hearing, the trial court granted resentencing to correct a sentencing error, but denied the motion for new trial by order dated April 13, 2016. Appellant filed a timely notice of appeal, and this case was docketed in this Court for the term beginning in December 2017. The case was orally argued on December 11, 2017.

1.    Although Willis does not contest the sufficiency of the evidence to convict him, it is this Court's practice to examine the sufficiency of the evidence in murder cases.  Viewed in the light most favorable to support the guilty verdicts, the evidence shows Willis was homeless at the time of these events.  He admits he slept on the tire company premises the night before the victim's body was found, and that he frequently slept there.  Willis also intermittently worked at the tire company.  The company's owner discovered the victim's body on the ground beside a disabled truck parked on the premises and called the police.  Officers arrived on the scene around 6:00 p.m. and proceeded to cordon off the area around where the body was found with tape bearing the words "Crime Scene."  While authorities were on the scene, Willis walked up and tried to cross the line created by the tape, but after he was stopped by a police officer, Willis left the premises.  About thirty minutes later, Willis showed up again riding a bicycle and drinking a beer.  Empty bottles of the brand of beer Willis was drinking were littered near the victim's body.  Upon request, he showed his identification card to an officer who was trying to keep Willis out of the area.  Although he refused to look at a Polaroid photograph that had been taken of the victim, he told the officer he did not recognize her.  Again, Willis was asked to leave.

Based on information gleaned from Willis's identification card, the officer discovered information that was used to obtain a warrant to gather a blood sample from Willis for DNA testing. Several months after the body was discovered, an officer located Willis, who voluntarily accompanied the officer to a local hospital where a sample of his blood was taken. While Willis was in custody for purposes of obtaining the blood sample, the police officer read him his *Miranda* rights.[2] Although Willis refused to execute the written waiver of rights form or to give a written or recorded statement, the interviewing officer testified that Willis indicated he understood his rights and agreed to speak with him. In the ensuing interview, the officer showed Willis a recent photograph of the victim provided by the victim's family. Willis denied he knew the victim and, in response to specific questioning, he denied having a sexual relationship with her. Willis was then released, and the case was placed on inactive status. Nine years later, however, after technological developments in the field of DNA identification, the DNA obtained from Willis's blood sample was identified as a match to biological material taken from the victim's body. Willis was indicted and tried. Similar transaction evidence was presented at

[2] *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

trial, all involving sexual assaults inside motor vehicles. Evidence was presented that in 1988, Willis forced a victim at gunpoint into a wrecker truck he was driving, raped her repeatedly, and forced her to perform oral sex on him before she escaped. A witness testified that in 1995, Willis forced her at knifepoint into the same parked pickup truck on the tire company parking lot beside which the victim's body was found. Once inside the vehicle, Willis raped her before she escaped by falling out of the truck onto the ground and then running off. Additionally, a witness testified that in 2001, after she responded to Willis's request to give him a ride, Willis forced her at gunpoint to stop her car, remove her clothes, and perform oral sex on him. He also choked her with his hands, forced her out of her car, and drove off. In the case on appeal, the victim's body was discovered partially nude, and forensic evidence showed that while the victim's cause of death was blunt force trauma to the head, she was also choked with a ligature.

Willis's defense was that someone else killed the victim elsewhere and dumped her body in the tire company parking lot at some point between the time he left that morning and the time the victim's body was discovered. The medical examiner testified there was no evidence of trauma to the victim's vaginal area, and Willis's attorney argued to the jury that the DNA evidence

proved only that Willis had sex with the victim at some point within 48 hours prior to her death. Willis testified at trial and admitted he sometimes engaged in sex with women he met on the street in exchange for money or drugs. Contrary to his custodial statement, Willis claimed he met the victim and had consensual sex with her in exchange for money two days before the time she was found dead at the tire company. He denied raping or killing her.

To warrant a conviction, as here, on circumstantial evidence, the evidence must exclude every other reasonable hypothesis save for the guilt of the accused. See former OCGA § 24-4-6 (now found at OCGA § 24-14-6).[3] Questions regarding the reasonableness of hypotheses, however, are generally to be decided by the jury that heard the evidence. On appeal, "this Court defers to the jury's assessment of the weight and credibility of the evidence." (Citation and punctuation omitted.) *Manning v. State*, 303 Ga. 723 (1) (814 SE2d 730) (2018). From the evidence presented at trial, the jury was entitled not to believe appellant's assertion that he was innocent of the victim's rape and murder and to reject his theory that another person committed the crimes and then transported the victim's body to the place where he slept the night

---

[3] Because appellant was tried in 2011, the old Evidence Code was applied. See Ga. L. 2011, pp. 99, 214, § 101.

before. We conclude the evidence was sufficient for a rational trier of fact to find appellant guilty beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Willis gave two statements to investigators, the first of which was made on the day the victim's body was discovered and the second of which was made when he was temporarily taken into custody for the purposes of obtaining a DNA sample pursuant to a search warrant. During a jury charge conference, the trial judge and the attorneys for both sides grappled with how to distinguish between the two statements, in the instructions to the jury, with respect to the State's duty to inform the defendant of his *Miranda* rights and how that impacts the jury's determination of the voluntariness of a statement. After considering various options, the prosecutor and defendant's trial counsel agreed that the judge would give a set of instructions about the jury's consideration of the statement allegedly made at the time the defendant arrived at the scene on a bicycle, instructing the jury that when a statement is made to an investigating officer under noncustodial circumstances, *Miranda* warnings are not required. The attorneys agreed that another set of instructions would be given about consideration of the statement made on the date defendant was picked up for a blood sample to be taken, at which time *Miranda* warnings

were required and allegedly given.  In the actual instructions to the jury the trial court stated as follows with respect to evidence relating to Willis's first statement:

> [T]there are two statements attributable to the defendant. The first statement was allegedly made on May 23rd, 1996, when the defendant [rode] a bicycle to the **scene of the crime** and allegedly made some statements to Detective Mathis.  In that circumstance where an accused is neither in custody nor so restrained as to equate to a formal arrest, any statements made to an investigating officer are made under noncustodial circumstances and *Miranda* warnings (constitutional rights) are therefore not required.

 (Emphasis supplied.)  Willis's counsel did not object to the charge as given.

Pursuant to Willis's theory of the case, whether the premises on which the victim's body was discovered was the scene of the crimes charged was a contested fact.  Accordingly, Willis asserts the court's jury instructions violated the version of OCGA § 17-8-57 that was in effect at the time of trial.[4] The language of that former Code section declared it to be an error, requiring reversal and the grant of a new trial, for any judge in a criminal case "to express or intimate his opinion as to what has or has not been proved . . . ."  Relying

---

[4]  See Ga. L. 1985, p. 1190, § 1.

upon this mandatory language of the former Code section, Willis asserts in his sole enumeration of error that this Court must reverse the convictions and grant a new trial.

After the date of Willis's trial, the General Assembly amended the statute. See Ga. L. 2015, p. 1050, § 1/SB 99 (effective July 1, 2015). With respect to a judge's expression of opinion as to whether a fact at issue has or has not been proved, the amended statute no longer requires automatic reversal on appeal. Instead, it requires a party alleging a violation of the statute to make a timely objection to provide the trial court with the opportunity to give a curative instruction or declare a mistrial if the objection is sustained. See OCGA § 17-8-57 (a) (2) (as amended). Failure to make a timely objection precludes appellate review unless the violation constitutes plain error affecting the substantive rights of the parties. OCGA § 17-8-57 (b) (as amended).[5]

The State responds to Willis's claim of error with two arguments. Assuming the version of OCGA § 17-8-57 that was in effect at the time of trial applies to Willis's appeal, the State argues that the language used in the jury instruction does not amount to an opinion about what has been proved, did not

_____

[5] The amended statute still requires a new trial to be granted if a judge expresses an opinion as to the guilt of the accused. OCGA § 17-8-57 (c).

violate the former statute, and therefore does not require reversal. Alternatively, the State asserts that subsection (b) of the amended statute is procedural in nature and, therefore, this Court should apply the statute, as amended, to the issue on appeal. In that case, according to the State, the convictions should not be reversed because plain error affecting the substantive rights of the appellant is not shown by the trial court's jury instruction.

(a) *Did the wording of the jury instruction violate the statutory rule?* Under the circumstances of this case, we cannot conclude that the trial court's statement that appellant spoke to investigators "at the scene of the crime" does not amount to an expression of the judge's opinion about whether a fact has been proved, as prohibited by both the former and revised versions of OCGA § 17-8-57. Willis's theory of the case was that the victim had been murdered elsewhere by some other person who then transported the victim's body to the place it was discovered. However inadvertent it was for the judge to refer to that place as the scene of the crime, and regardless of the fact that witnesses used the term "crime scene" at trial to refer to the premises where the body was discovered, whether this was the site where the charged crimes occurred was a contested fact. For that reason we are not persuaded by the State's argument that the phrase "scene of the crime" is commonly used to refer to a place where

forensic evidence may be gathered, and thus was an appropriate term to describe the place where the victim's body and other evidence was found. We are not persuaded it was clear to the jury that the reference to "crime scene" was merely a colloquial use of the term. Instead, we conclude that the jury could have reasonably taken this instruction to be an expression or intimation of the trial court's opinion that the place where the body was found was the scene of the murder, and a rejection of Willis's theory that the crimes were committed elsewhere by another person who then transported the body to the location where it was discovered. See *Palmer v. State*, 330 Ga. App. 870, 871-872 (1) (769 SE2d 600) (2015) (jury instruction suggested the trial court's opinion that a child's statement regarding the accused's alleged sexual misconduct was reliable or true).

The circumstances of this case are distinguishable from those in *Sauerwein v. State*,[6] where the trial judge commented upon a fact that was undisputed and uncontradicted, and this Court found no violation of the statute. Instead, the comment in this case is analogous to the one made by the trial court

---

[6] 280 Ga. 438, 440 (2) (629 SE2d 235) (2006).

in *Rouse v. State*,[7] in which the trial court stated in its preliminary instructions to the venire that they would be hearing in the trial about a case "that happened in Muscogee County . . . ." This Court determined that the statement "clearly and unambiguously suggested that venue in Muscogee County had been established or was not in dispute in this case." Id. Paraphrasing the Court in *Rouse*, when a trial judge makes a statement to jurors, "however inadvertent or unintentional" informing them that a certain place was the scene of the crime, even though the accused contested whether the charged crimes occurred at that place, the statement violates OCGA § 17-8-57 because it could be construed as a comment regarding a disputed fact.

(b) *Does the revised statute apply retroactively?* Nevertheless, reversal and remand for retrial would not be required without a showing of plain error if this issue is governed by the revised statute. In an earlier opinion, this Court alluded to the fact that the revised statute might properly be construed as a procedural law that should be applied retroactively. See *Pyatt v. State*, 298 Ga. 742, 747 (3) n. 9 (784 SE2d 759) (2016). In *Pyatt*, however, it was not necessary to decide whether the revised statute applied because we concluded

---

[7] 296 Ga. 213, 215 (2) (765 SE2d 879) (2014).

that even under the terms of the former statute, requiring reversal in the event of a trial court's violation of OCGA § 17-8-57, no violation was shown. Id. In the case now before us, we are squarely faced with making such a decision because the trial court's statement represents a violation of either the former or revised version of the statute's prohibition against a judge's expressing or intimating an opinion about whether a fact has been proved. The Court of Appeals, in a split whole court decision, has already faced such a decision and found that, as presaged in *Pyatt*, subsection (b) of OCGA § 17-8-57 is properly applied retroactively to the appellate review of a trial judge's comment upon what facts have been proved in a case. See *Quiller v. State*, 338 Ga. App. 206, 209 (789 SE2d 391) (2016). At least as applied in this case, we agree.

When a statute governs only court procedure, "it is to be given retroactive effect absent an expressed contrary intention." *Polito v. Holland*, 258 Ga. 54, 55 (2) (365 SE2d 273) (1988). The 2015 amendment to OCGA § 17-8-57 contains no express limitation to cases tried on or after its effective date. Moreover, "the presumption against a retrospective statutory construction does not apply to statutory enactments which affect only court procedure and practice, even when the alteration from the statutory change results in a disadvantage to a party." *Murphy v. Murphy*, 295 Ga. 376, 377

(761 SE2d 53) (2014). Statutes typically apply to activity occurring after the effective date of the statute, and the appeal in this case was filed after the effective date of the 2015 amendment to OCGA § 17-8-57. This militates in favor of applying subsection (b) of the statute as the standard of review to apply to the appeal in this case. Subsection (b) of OCGA § 17-8-57, as amended, addresses the standard of appellate review that applies when a trial judge has violated the prohibition against expressing an opinion about whether a fact at issue has been proved. It states that when the party asserting such a violation fails to make a timely objection, appellate review is authorized only if the "violation constitutes plain error which affects substantive rights of the parties." Id. As noted in *Pyatt,* subsection (b) "is specifically directed to appellate review," and "not to proceedings in the trial court, which, in this case, predated the amendment." 298 Ga. at 747 (3) n. 9, citing *United States v. Nunemacher*, 362 F3d 682, 686 (10th Cir. 2004) and *United States v. Mallon*, 345 F3d 943, 946 (7th Cir. 2003) (both of which applied a new standard of appellate review notwithstanding that it was adopted after conclusion of the trial court proceedings). Taking these factors into consideration, we agree with the majority opinion in *Quiller* that, because subsection (b) of OCGA § 17-8-57 is not aimed at regulating any conduct at trial, but instead addresses the

standard of appellate review of an error already made at trial, the standard of appellate review set out in that subsection is properly given retroactive effect to cases tried before the enactment date but appealed after that date. See *Quiller*, supra, 338 Ga. App. at 209.

(c) *Has appellant made a showing of plain error?* Applying the plain error standard of review imposed by subsection (b), we conclude reversal is not required. In order to establish reversible error under the plain error standard of review for jury instructions, the instruction must not only be erroneous; the error must be obvious; the error must not have been affirmatively waived; and the appellant must make an affirmative showing that the instruction likely affected the outcome of the proceedings. See *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011); see also *Shaw v. State*, 292 Ga. 871, 873 (2) (742 SE2d 707) (2013). Only if the appellant has met the burden of proof with respect to these three prongs of the plain error test, the appellate court may, in its discretion, remedy the error if it seriously affects the fairness, integrity or public reputation of the judicial proceedings. *Kelly*, supra, 290 Ga. at 33 (2) (a).

Given the strong evidence of Willis's guilt, we conclude Willis has failed to demonstrate the court's reference to his appearance at the scene of the crime likely affected the outcome of the proceedings. Physical evidence demonstrated Willis had engaged in sexual intercourse with the victim within 48 hours of the discovery of her body. In the interview he gave to the officer investigating the victim's death, Willis denied having a sexual relationship with her, but at trial, after incriminating DNA evidence was presented to the jury, he contradicted his initial statement and explained this evidence by testifying he had a consensual sexual encounter with the victim shortly before her body was discovered. Willis admitted he had slept in the vehicle next to where the victim's body was discovered the night prior to that discovery. Similar transaction evidence established that Willis had attacked and raped two other women at the location where the body was found, and that he had sexually attacked another woman, also in a motor vehicle, at another location. Accordingly, Willis has failed to establish plain error arising from the jury instruction in question, and we reject his assertion that the convictions should be reversed.

Judgment affirmed. All the Justices concur, except Nahmias, Blackwell, Boggs, and Grant, JJ., who concur specially to Division 2 (a).

NAHMIAS, Justice, concurring specially.

I join the Court's opinion except for Division 2 (a). I am not convinced that the fraction of a sentence in one of the trial court's jury instructions on which Willis now focuses would have been understood by the jury as the court's expression of an opinion on the proof of a fact in violation of OCGA § 17-8-57. But there is no need to decide that question, because even assuming a violation occurred, our review of it on appeal is governed by the 2015 version of OCGA § 17-8-57 and the trial court's comment clearly did not amount to plain error, as we properly hold in Division 2 (b) and (c).

I am authorized to state that Justices Blackwell, Boggs, and Grant join in this special concurrence.

Decided June 29, 2018.

Murder. Fulton Superior Court. Before Judge Bedford, Senior Judge.

Ross & Pines, Andrew S. Fleischman, for appellant.

Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Kevin C. Armstrong, Michael V. Snow, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew D. O'Brien, Assistant Attorney General, for appellee.