**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 21, 2025**

# In the Court of Appeals of Georgia

A25A1597. DAVIS v. THE STATE.

HODGES, Judge.

Following a jury trial, Devin Davis was convicted of unlawful acts of violence in a penal institution and battery.[1] Davis appeals from the denial of his motion for new trial as amended, asserting that the evidence was insufficient to sustain his conviction for unlawful acts of violence in a penal institution and the trial court erred in its charge to the jury. For the reasons that follow, we affirm.

> On appeal, the evidence must be viewed in a light most favorable to the verdict, and appellant no longer enjoys a presumption of innocence; moreover, on appeal this court determines evidence

---

[1] The jury found Davis not guilty of violating the Street Gang Terrorism and Prevention Act, and the trial court entered a directed verdict of acquittal on another count of violation of the Street Gang Terrorism and Prevention Act.

sufficiency, and does not weigh the evidence or determine witness credibility. In evaluating the sufficiency of the evidence, the relevant question is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

(Citation and punctuation omitted.) *Burge v. State*, 243 Ga. App. 673, 674 (2000).

So viewed, the relevant evidence shows that Davis was booked into the Gwinnett County jail on April 9, 2020, without bond, on a charge of sex trafficking. The jail contains a number of units or pods, with upper and lower levels where inmates are housed. F Pod alone could house approximately 144 inmates. Deputies are responsible for maintaining the safety of the inmates in the jail and performing duties within the housing units, like making sure the inmates are fed and receive their medication twice per day. One of the deputies testified to the procedure where inmates receive medication: Twice a day, inmates receive a medical pill pass by the registered nurse, they line up, collect their medicine, and then return to their cells.

On June 30, 2022, Davis was housed in F Pod. The deputy working in F Pod that day testified that Davis was scheduled to receive medication from the pill line. During the afternoon pill pass, two inmates started a fight. While the deputy was restraining one of the inmates, Davis "ran up and kicked" the face of the inmate lying

on the floor. According to the deputy, Davis was attempting to assist the inmate being restrained, who was Davis' cellmate.

The lead investigator for the incident testified that following the fight he interviewed the inmates involved, including Davis. Surveillance videotapes from inside F Pod were played for the jury, and the investigator identified "Inmate Davis" on the video and at trial.

A jury convicted Davis of unlawful acts of violence in a penal institution and battery, and Davis appeals following the denial of his motion for new trial as amended.

1. Davis argues that the evidence was insufficient to support his conviction for unlawful acts of violence in a penal institution because the State failed to prove that (a) he was "legally" confined and (b) the Gwinnett County jail was a penal institution. We disagree.

Davis was charged with violating OCGA § 16-10-56(b), which provides that "[n]o person legally confined to a penal institution shall commit an unlawful act of violence or any other act in a violent or tumultuous manner in a penal institution." To establish this offense, the State was required to show: "(1) that [Davis] was legally

confined at the time of the incident; (2) that the [Gwinnett County] jail was a penal institution of a political subdivision of the state; and (3) that [Davis] committed an act in a violent and tumultuous manner[.]" *Paul v. State*, 308 Ga. App. 275, 277 (2011). "As used in this Code section, the term 'penal institution' means any place of confinement for persons accused of or convicted of violating a law of this state or an ordinance of a municipality or political subdivision of this state." OCGA § 16-10-56(a). Davis asserts that the State offered no evidence on the first two elements: that he was legally confined at the time of the event and that the Gwinnett County jail was a penal institution. He presents no argument regarding the third element: that the action was committed in a violent and tumultuous manner.

(a) *Legal confinement.* With respect to the element of legal confinement, Davis claims that although numerous witnesses testified that the incident occurred at the Gwinnett County jail, "[t]here was no evidence that Davis was confined because he was accused of or convicted of violating a law of the State of Georgia." We find no merit in this argument.

First, the evidence at trial showed that the incident occurred while Davis was an inmate in a cell block at the Gwinnett County jail. Davis introduced into evidence

4

an inmate record showing that he had been booked into the Gwinnett County jail two years prior to the incident without bond. In addition, the evidence showed that Davis was waiting in line with the other inmates for his medication when his cellmate got into a fight and Davis attempted to help him. When identifying the individuals involved in the altercation on surveillance videotapes from inside the unit, the lead investigator at the jail specifically referred to Davis as "Inmate Davis." Viewed in a light most favorable to the verdict, this evidence authorized the jury to conclude that Davis was legally confined in the Gwinnett County jail at the time of the incident. See *Paul*, 308 Ga. App. at 276-79 (1) (holding that testimony by corrections officers regarding the housing of prisoners at the jail was sufficient to support a finding that the defendant was legally confined); see also *Drew v. State*, 285 Ga. 848, 849 (2009) (finding sufficient evidence to support defendant's conviction under OCGA § 16-10-56 where the incident occurred while the defendant was being held as an inmate at an adult detention center and in a common area for personal time).

Moreover, to the extent that Davis contends the State was required to introduce evidence of his underlying arrest or conviction to establish the element of legal confinement, he has waived this claim. Significantly, prior to trial, Davis moved in

limine to exclude any evidence as to the reason he was "in custody," arguing that the underlying basis for his incarceration — sex trafficking — was prejudicial. Because Davis' motion asked the trial court to exclude the very evidence that he now contends should have been introduced, any self-induced error affords no basis for reversal. See *Pope v. State*, 266 Ga. App. 602, 602-03 (2004) (finding that defendant's "written motion asked the trial court to exclude the very evidence that his oral argument at trial contended should have been admitted" and noting the well-settled rule that "[o]ne cannot complain of a result he procured or aided in causing"); see also *Albright v. State*, 354 Ga. App. 538, 545 (2020) (holding that defendant waived his right to challenge a trial court's curative instruction that he consented to); *Jenkins v. State*, 310 Ga. App. 811, 813-14 (2011) (holding that defendant waived his right to challenge the sufficiency of the evidence by his comments to the court and the prosecutor, which effectuated a stipulation to the elements).

(b) *Penal institution*. Davis argues that the State "presented no evidence that the Gwinnett County jail qualified as a penal institution under the statutory definition." We again disagree.

As stated earlier, OCGA § 16-10-56(a) defines the term "penal institution" to mean "any place of confinement for persons accused of or convicted of violating a law of this state or an ordinance of a municipality or political subdivision of this state." OCGA § 42-1-5(a)(3), cited by Davis in his appellate brief, similarly defines a "penal institution" as "any place of confinement for persons accused of or convicted of violating a law of this state or an ordinance of a political subdivision of this state." Although Davis cites *Paul*, 308 Ga. App. at 277, for the proposition that no statute or appellate decision provides that every county jail is a "penal institution" as a matter of law, we conclude that the State presented sufficient evidence at trial that the Gwinnett County jail qualified as a penal institution under the statutory definitions.

According to the record, the Gwinnett County jail is clearly a "place of confinement for persons accused of" violating the law, meeting the statutory definitions of OCGA §§ 16-10-56(a) and 42-1-5(a)(3). In fact, one of the deputies testified that F Pod itself houses approximately 144 inmates, and inmates receive meals and medication twice daily. Moreover, the record shows that Davis had been confined in the jail, without bond, from April 9, 2020, through the date of the

7

incident, June 30, 2022. Viewed in a light most favorable to support the verdict, this evidence authorized the jury to find beyond a reasonable doubt that the Gwinnett County jail is a penal institution. See *Paul*, 308 Ga. App. at 279 (holding that "the State's evidence regarding the prisoners housed at the Harris County jail would have been sufficient for the jury to conclude that it constituted a penal institution within the meaning of OCGA § 16-10-56").

2. Davis' second claim of error concerns the trial court's jury instructions. He argues that the trial court committed plain legal error by identifying the Gwinnett County jail as a penal institution, taking that question of fact out of the jury's hands. We find no plain error.

We note at the outset, as Davis acknowledges, that because he raised no objection to the jury instructions at trial, we review them only for plain legal error. See OCGA § 17-8-58(b) (failure to object as described in subsection (a) "shall preclude appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties"). We further note, as indicated in Division 1, that "the question of whether the [Gwinnett]

8

County jail qualified as a penal institution under OCGA § 16-10-56 was properly for the jury[.]" *Paul*, 308 Ga. App. at 278.

With these principles in mind, we turn to the challenged jury instruction. In detailing the crimes with which Davis was charged, the trial court instructed the jury as follows:

> Count 1, unlawful acts of violence in a penal institution. For unlawful acts of violence in a penal institution, the State must prove that the defendant, one, while being legally confined in a penal institution, to wit: the Gwinnett County Jail; two, a penal institution of the state of Georgia; three, did unlawfully commit an act in a violent, tumultuous manner.

> A penal institution means a place of confinement for persons accused or convicted of violating a law of this state or an ordinance of a municipality or political subdivision of this state.

The court then went on to address Count Two.

Davis asserts that the trial court violated OCGA § 17-8-57 by instructing the jury that the Gwinnett County jail was a penal institution. OCGA § 17-8-57(a) provides: "It is error for any judge, during any phase of any criminal case, to express or intimate to the jury the judge's opinion as to whether a fact at issue has or has not been proved or as to the guilt of the accused." Our Supreme Court has concluded

9

that, in the context of jury instructions, OCGA § 17-8-57 "is violated only when the trial court's instruction, considered as a whole, assumes certain things as facts and intimates to the jury what the judge believes the evidence to be." (Citations and punctuation omitted.) *Ingram v. State*, 290 Ga. 500, 504 (2012); see generally *Thompson v. State*, 341 Ga. App. 883, 885 (2017) ("An erroneous jury instruction cannot be considered in isolation, but must be considered in the context of the entire jury charge on the record as a whole to determine whether there is a reasonable likelihood that the jury improperly applied the challenged instruction.") (citation and punctuation omitted).

In this case, the trial court's use of the phrase "to wit" in its jury charge is unfortunate. According to our Supreme Court, "to wit" is defined as "that is to say; namely[.]" (Citation and punctuation omitted.) *Moss v. State*, 311 Ga. 123, 129 (2021). This Court likewise has equated the phrase to mean "that is to say" and "or" — words "used to clarify what has already been said[.]" (Citation and punctuation omitted.) *Nat'l-Ben Franklin Ins. Co. v. Prather*, 106 Ga. App. 311, 314 (1962); accord *Purdy v. Quinn*, 104 Ga. App. 385, 386 (1961). The phrase "explicitly link[s]" a general allegation to a more specific allegation. *Moss*, 311 Ga. at 128-129. As such,

though unintentional, the court's charge could be construed as a comment regarding a disputed fact, effectively telling the jury that the Gwinnett County jail is a penal institution.

That, however, does not end our inquiry because reversal is not required without a showing of plain error.[2] See *Willis v. State*, 304 Ga. 122, 128, 129 (2018).

> In order to establish reversible error under the plain error standard of review for jury instructions, the instruction must not only be erroneous; the error must be obvious; the error must not have been affirmatively waived; and the appellant must make an affirmative showing that the instruction likely affected the outcome of the proceedings. Only if the appellant has met the burden of proof with respect to these three prongs of the plain error test, the appellate court may, in its discretion, remedy the error if it seriously affects the fairness, integrity or public reputation of the judicial proceedings.

---

[2] Davis argues that a violation of OCGA § 17-8-57 always constitutes plain error. That is an incorrect statement of the law. As our Supreme Court noted in *Willis v. State*, 304 Ga. 122, 129 (2018), OCGA § 17-8-57 was amended in 2015, and the amended statute provides that a failure to timely object if a judge expresses or intimates to the jury his or her opinion as to whether a fact at issue has or has not been proved "shall preclude appellate review, unless such violation constitutes plain error which affects substantive rights of the parties." OCGA § 17-8-57(a),(b). Reversal is only *required* if a judge expresses an opinion as to the guilt of the accused. OCGA § 17-8-57(c); accord *State v. Cleveland*, 321 Ga. 375, 384-85 (2025). That subsection is not implicated in this case.

(Citations omitted.) Id. at 129. Applying the plain error standard of review, we conclude that reversal is not required in this case.

The trial court's recitation of Count One in the instruction challenged by Davis generally tracked the language used in the indictment[3] and provided all three elements the State had to prove to establish the crime of unlawful acts of violence in a penal institution under OCGA § 16-10-56(b): (1) the defendant was legally confined at the time of the incident; (2) the Gwinnett County jail was a penal institution of a political subdivision of the state; and (3) the defendant committed an act in a violent and tumultuous manner. *Paul*, 308 Ga. App. at 277. The court then recited the statutory definition of a penal institution. Prior to this portion of the charge, the trial court provided the jury with a copy of the indictment and instructed the jury that: (i) "No person shall be convicted of any crime unless and until each element of the crime, as charged, is proven beyond a reasonable doubt[,]" and (ii) "[t]he burden of proof rests upon the State to prove every material allegation of the indictment and every essential

---

[3] The indictment alleged that Davis committed the offense of unlawful acts of violence in a penal institution, in contravention of OCGA § 16-10-56, in that he "on the 30th day of June, 2022, while being legally confined in Gwinnett County Jail, a penal institution of the State of Georgia, did unlawfully commit an act in a violent tumultuous manner, to wit: repeatedly striking and kicking [the victim.]"

12

element of the crime charged beyond a reasonable doubt." And toward the end of its jury instructions, the trial court instructed the jury: "By no ruling or comment that the Court has made during the progress of the trial has the Court intended to express any opinion upon the facts of this case, upon the credibility of the witnesses, upon the evidence, or upon the guilt or innocence of the defendant."

Even if the first element addressed in the challenged instruction was confusing and could be construed as the court's expression of an opinion on a disputed fact by the use of the phrase "to wit," any such error was cured by the court's recitation of the second element — instructing the jury that the State "must prove" that Gwinnett County jail is "a penal institution of the state of Georgia" — and the jury charge as a whole — informing the jury of the elements of the crime it was required to find beyond a reasonable doubt, giving the indictment to the jury, and charging the jury on the State's burden of proof. See *Simpson v. State*, 302 Ga. 875, 877 (2017) (finding that any error in the jury instruction was cured because the court provided the jury with the indictment and instructed the jury that the State was required to prove every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt); *Lee v. State*, 347 Ga. App. 508, 511-12 (2018) (finding that

any error in the court's jury instruction was cured because "[t]he instructions as a whole properly limited the jury's consideration to the crimes charged in the indictment").

Given the strong evidence that the Gwinnett County jail is a penal institution, as recited in Division 1 (b), and considering the trial court's jury instructions as a whole, we conclude that Davis has failed to demonstrate that the court's reference likely affected the outcome of the proceedings. See *Willis*, 304 Ga. at 129-30 (holding the defendant failed to demonstrate that the trial court's comment likely affected the outcome of the proceedings given the strong evidence of his guilt); *Carlson v. State*, 329 Ga. App. 309, 311-12 (2014) (holding the defendant failed to demonstrate that it was highly probable that an inaccurate instruction affected the outcome of the proceeding in a case where the court charged that jury that "doing violence" meant "physically resisting[,]" thereby eliminating the requirement that the jury find he committed violence, because the evidence showed violent physical resistance and the court instructed the jury on the statutory definition of the crime and read the indictment to the jury). Accordingly, Davis has failed to establish plain error arising

14

from the jury instruction in question, and we reject his assertion that his conviction should be reversed on this ground.

*Judgment affirmed. McFadden, P. J., and Pipkin, J., concur.*