304 Ga. 400
FINAL COPY


S18A0624. REED v. THE STATE.


BENHAM, Justice.

Appellant Philmore Reed, Jr., resided at a property located at 1020 Donald Lee Hollowell Parkway and operated businesses there and at other contiguous parcels. He was in his mid-seventies when these offenses occurred.[1] At trial, evidence was presented to show that commencing in 2009, appellant was involved in a civil dispute with other parties concerning ownership of these parcels. In late 2010, the party who claimed to be the rightful owner of the

---

[1] The crimes occurred on February 24, 2011. On June 14, 2011, a Fulton County grand jury returned an indictment charging appellant with malice murder; felony murder (aggravated assault); aggravated assault upon Travis Fenty by shooting him with a shotgun, a deadly weapon; aggravated assault upon James Donegan by shooting at, toward and in his direction with a shotgun, a deadly weapon; and possession of a firearm during the commission of a felony. Following a jury trial conducted between June 18, 2012 and June 21, 2012, the jury returned a not guilty verdict on the lesser included offense of voluntary manslaughter as well as the aggravated assault count with respect to Donegan, and a verdict of guilty on all remaining counts. Appellant was sentenced to life imprisonment for malice murder. The felony murder verdict was vacated as a matter of law, and the aggravated assault count merged with the murder conviction. Appellant was sentenced to five years to serve consecutive to the life sentence for the conviction on the possession of a firearm count. Appellant filed a timely motion for new trial on July 6, 2012, which was later amended. Following a hearing, the trial court denied the motion for new trial by order dated March 29, 2016. Appellant filed a timely notice of appeal, and this case was docketed to the April 2018 term of court. The case was orally argued on April 16, 2018.

parcel on which appellant resided, by virtue of a judicial sale of the property, hired a tow company to enter the property to remove old vehicles parked on it. That tow truck operator left after appellant threatened his life if he came back. In February 2011, the owner hired a different company, and employees Travis Fenty and James Donegan went to the property three different times. On February 3, appellant called the police, and when the police arrived, Fenty and Donegan stated they would not return without the proper documentation to show they had authority from the true owner of the property. On February 24, they came to the property again and towed several vehicles away. When they returned later that day, they saw appellant standing on the roof of the building with a shotgun. Fenty commenced calling 911 and asked appellant to come down to talk, telling him they had with them a copy of the deed showing the person who hired them owned the property. Appellant told the men he was through talking and fired two shots at them. Fenty was struck in the chest with the spray of shotgun pellets from the first shot, and died from his wounds. The evidence showed appellant fired a second shot which hit one of the truck tires. The police arrived at the scene and took appellant into custody. After being informed of his rights, appellant voluntarily gave a statement in which he confessed to the shooting.

Appellant was charged with murder and other offenses. Following a jury trial, the jury returned a verdict of not guilty on the lesser included offense of voluntary manslaughter, as well as the count alleging aggravated assault upon Donegan. Appellant was found guilty of all remaining counts, and the trial judge sentenced him to life in prison for malice murder plus five years to serve for the possession of a firearm offense. He now appeals.

1.    Although appellant does not challenge the sufficiency of the evidence to convict him, it is this Court's practice to examine the sufficiency of the evidence in murder cases. Viewed in the light most favorable to the guilty verdicts, we conclude the evidence, as summarized above, was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that appellant was guilty of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2.    *The trial court's failure to give a jury instruction on no duty to retreat.* Appellant asserts that the trial court committed plain error when it failed to instruct the jury on the principle of no duty to retreat. We disagree.

We start by noting that the trial court gave an appropriate charge on appellant's sole defense, the defense of habitation. As part of his theory of defense, appellant claims he reasonably believed the victim and his co-worker

entered his property for the purpose of committing the felony of theft by taking his vehicles from the property and that his use of force was necessary to prevent that felony, thereby establishing, according to appellant, one of the grounds for the permissible use of force in defending an unlawful entry into a habitation. See OCGA § 16-3-23 (3).[2] In response to appellant's request, the trial court gave an instruction on theft by taking. Appellant asserts, however, that the State inserted the issue of duty to retreat into the proceedings when the prosecutor raised during appellant's cross-examination, and in the State's closing argument, that appellant could have called the police instead of confronting Fenty and Donegan. At a charge conference, appellant's counsel made a written request for instructions on what he referred to as "the general principle of justification" and on the principle of no duty to retreat. Both of these instructions were denied, although, as noted, the trial court agreed to give an instruction on defense of habitation. Trial counsel asked to reserve his objection regarding the failure to give these requested instructions until after all the evidence was presented. Appellant made no further request for these two instructions, however, and made no objection to the failure to give the

---

[2] See footnote 5, infra.

instructions after the trial court delivered the jury charge. Accordingly, appellant acknowledges that he must show plain error in order to prevail on his assertion that the trial court's failure to give these instructions constitutes reversible error. See *Willis v. State,* 304 Ga. 122, 129 (2) (c) (816 SE2d 656) (2018).

As this Court has repeatedly stated:

> In order to establish reversible error under the plain error standard of review for jury instructions, the instruction must not only be erroneous; the error must be obvious; the error must not have been affirmatively waived; and the appellant must make an affirmative showing that the instruction likely affected the outcome of the proceedings. See *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011); see also *Shaw v. State*, 292 Ga. 871, 873 (2) (742 SE2d 707) (2013). Only if the appellant has met the burden of proof with respect to these three prongs of the plain error test, the appellate court may, in its discretion, remedy the error if it seriously affects the fairness, integrity or public reputation of the judicial proceedings. [Cit.]

*Willis v. State*, supra, 304 Ga. at 129 (2) (c). Citing *Price v. State*,[3] appellant claims the trial court's failure to give a charge on no duty to retreat was erroneous because a trial court must charge the jury completely on a defendant's sole theory of defense, even absent a request to do so, if there is

---

[3] 289 Ga. 459 (2) (712 SE2d 828) (2011).

some evidence to support the charge.[4] With respect to the principle of no duty to retreat, appellant argues that the jury charge as a whole was incomplete and not adjusted to the evidence because the jury was not instructed that an individual who is not the aggressor is not required to retreat, and has the right to stand his or her ground and use force in defense of habitation in the manner set forth in OCGA § 16-3-23 (1) or (3).[5] See OCGA § 16-3-23.1.[6]

Even assuming the evidence showed appellant was not the aggressor and that the jury could find his use of force was justified, and also assuming, without deciding, that the prosecutor's questions to appellant about why he did not call the police raised the issue of retreat, the trial court's failure to instruct

---

[4] Appellant also notes that the Suggested Pattern Jury Instructions include a notation that the charge on the principle of no duty to retreat should be given even absent a request when the argument or evidence raises the issue of retreat in the defense of self, habitation, or other property. See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 3.10.13.

[5] Pursuant to OCGA § 16-3-23 (1), a person is justified in using force that is intended or likely to cause death or great bodily harm in defense of unlawful entry upon a habitation if "[t]he entry is made or attempted in a violent and tumultuous manner and he or she reasonably believes that the entry is attempted or made for the purpose of assaulting or offering personal violence . . . and that such force is necessary to prevent the assault or offer of personal violence." Subsection (3) of that Code section provides justification for using deadly force in defense of an unlawful entry if "[t]he person using such force reasonably believes that the entry is made or attempted for the purpose of committing a felony therein and that such force is necessary to prevent the commission of the felony."

[6] OCGA § 16-3-23.1 states, in pertinent part: "A person who uses threats or force in accordance with . . . Code Section 16-3-23, relating to the use of force in defense of a habitation . . . has no duty to retreat and has the right to stand his or her ground and use force as provided in said Code section[ ], including deadly force."

the jury that a person who is justified in using force to defend a habitation has no duty to retreat does not mandate reversal because the given charge fairly presented appellant's defense to the jury. See *Price v. State*, supra, 289 Ga. at 460 (2). The trial court's instructions covered the law of justification in general. It also specifically covered the law of justification with respect to use of force in defense of habitation "such that all of [appellant's] defenses could be properly considered, and any . . . additional specific instructions by the trial court on the duty to retreat were unnecessary." *Ballard v. State*, 297 Ga. 248, 250 (3) (773 SE2d 254) (2015). The trial court charged the jury that "[a] person is justified in threatening or using force against another when and to the extent that he reasonably believes that such threat or force is necessary to prevent or terminate such other's unlawful entry into or attack upon habitation." It charged that the use of force which is intended or likely to cause death or bodily harm is justified only, among other reasons, if "the person using such force reasonably believes that the entry is made or attempted for the purpose of committing a felony therein, and that such force is necessary to prevent the commission of the felony." Having reviewed the trial transcript and the entire jury charge, we conclude appellant has failed to make an affirmative showing that the alleged erroneous instructions likely affected the outcome of the

proceedings. See *Shaw v. State*, supra, 292 Ga. at 873-874 (2) (rejecting appellant's assertion that a charge on no duty to retreat should have been given because he failed to show the alleged error probably affected the outcome since he had a fair opportunity to present his defense of self-defense and the transcript showed the trial court adequately charged the jury on the justification of self-defense). Because appellant has failed to meet the burden of proof to establish one of the mandatory prongs of the plain error test, he cannot prevail on his assertion that the trial court's jury instructions created reversible error. See *Willis v. State*, supra, 304 Ga. at 130 (2) (c).

3. *The trial court's failure to give jury instructions on involuntary manslaughter and criminal negligence.* Appellant testified at trial and told the jury that when he fired the shotgun he was not aiming at Fenty but was aiming for the nose of the tow truck to disable it and stop the men from leaving until he could dress and go downstairs to speak to them. Appellant asserts that the trial court committed plain error when it refused to give appellant's requested charges on criminal negligence and on involuntary manslaughter as a lesser included offense of murder. The trial judge announced at the charge conference that he would give an instruction on voluntary manslaughter but that he would not instruct on criminal negligence or involuntary manslaughter

because, in his judgment, the evidence did not support the giving of these instructions. Appellant objected at that time, but failed to renew his objection after the court charged the jury. Appellant again acknowledges that he must show plain error in the jury instructions to prevail on his assertion that the failure to give these charges created reversible error.

Appellant argues the jury could have found that he acted simply with criminal negligence and therefore could have found him guilty of the offense of involuntary manslaughter by causing the death of another, without any intention to do so, by the commission of an unlawful act other than a felony.[7] Though appellant admitted he fired the gun intentionally, he denied he intentionally shot Fenty and, instead, claimed he was attempting merely to shoot at and disable the tow truck. Appellant testified he knew that pellets from a shotgun blast spread, but he nevertheless argues the jury was entitled to find he acted recklessly, and not with intent to assault Fenty with a deadly weapon. To prevail on this argument requires appellant affirmatively to

---

[7] OCGA § 16-5-3 (a) says: "A person commits the offense of involuntary manslaughter in the commission of an unlawful act when he causes the death of another human being without any intention to do so by the commission of an unlawful act other than a felony." OCGA § 16-2-1 (b) defines criminal negligence as "an act or failure to act which demonstrates a willful, wanton, or reckless disregard for the safety of others who might reasonably be expected to be injured thereby."

establish all four prongs of the plain error test, which is a difficult standard to satisfy. See *State v. Kelly*, supra, 290 Ga. at 33 (2) (a). Even assuming the trial court erred in failing to give an instruction on involuntary manslaughter and criminal negligence, appellant has failed to satisfy the third element of the plain error test in that he has failed to make an affirmative showing that the error likely affected the outcome of the trial.

The jury convicted appellant of malice murder and aggravated assault, and the evidence amply supported those verdicts. Donegan testified that after he told Fenty a second time that he saw appellant on the roof with a raised gun, Donegan ran and Fenty looked up, commenced dialing 911, and asked appellant to come down and talk. Appellant then said that he was through talking and fired the gun. Appellant notes that aggravated assault with a deadly weapon requires a showing that the accused committed simple assault, and that simple assault, as defined by OCGA § 16-5-20 (a) (2), involves "an act which places another in reasonable apprehension of immediately receiving a violent injury." From Donegan's testimony, appellant argues that insufficient evidence was presented to show Fenty experienced such reasonable apprehension. But simple assault is also defined as an attempt to commit a violent injury to another person. See OCGA § 16-5-20 (a) (1). Based on its

reading of the indictment, the trial court twice charged the jury that it could find appellant guilty of aggravated assault only if it found beyond a reasonable doubt that appellant "attempted to cause a violent injury to the alleged victim." Moreover, by finding appellant guilty of malice murder, the jury found beyond a reasonable doubt that he shot at the victim with malice aforethought.[8] Appellant has not shown that the failure of the trial court to give the charges at issue likely affected the outcome of the trial. Accordingly, appellant has failed to demonstrate plain error for the failure to give these requested instructions.

Judgment affirmed. Melton, C. J., Nahmias, P. J., Hunstein, Blackwell, Boggs, and Peterson, JJ., concur.

---

[8] The trial court properly instructed the jury that murder requires a finding beyond a reasonable doubt that the person charged caused the death of another human being "unlawfully and with malice aforethought, either express or implied," and it properly instructed the jury on what must be shown to establish malicious intent.

Decided September 10, 2018.

Murder. Fulton Superior Court. Before Judge Baxter.

Nazish A. Ahmed, Stephen R. Scarborough, for appellant.

Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Joshua D. Morrison, Aslean B. Zachary, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General, for appellee.