310 Ga. 499
FINAL COPY

S20A1182.  THRIFT v. THE STATE.

MCMILLIAN, Justice.

Craig Lester Thrift was convicted of felony murder in connection with the death of Terry Rouse.[1] On appeal, Thrift contests the sufficiency of the evidence to support his conviction; the denial of his motion for new trial on the general grounds; the denial of five motions for mistrial; the admission of certain evidence presented by the State; the exclusion of certain evidence offered by the defense; and the restriction of his attorney's cross-examination of one of the State's witnesses. Additionally, Thrift asserts that he

---

[1] Rouse disappeared on May 11, 1991, and Thrift was indicted for his murder by a Ware County grand jury almost 21 years later, on April 3, 2012. The indictment charged Thrift with one count of malice murder and one count of felony murder based on aggravated assault. Thrift was tried from April 14 to 17, 2014, and the jury acquitted him of malice murder but found him guilty of felony murder. The trial court sentenced him to life in prison. Thrift filed a motion for new trial on April 23, 2014, and amended that motion on January 26, 2017, and again on July 6, 2017. The trial court denied Thrift's motion as amended on February 7, 2019, and Thrift timely filed a notice of appeal. The case subsequently was docketed to the August 2020 term of this Court and submitted for a decision on the briefs.

is entitled to a new trial under a cumulative error analysis. We affirm for the reasons set forth below.

1. Thrift asserts that the evidence at trial was insufficient to support his conviction for felony murder. In evaluating whether the evidence at trial was sufficient as a matter of due process under the Fourteenth Amendment of the United States Constitution, this Court considers whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). In performing this evaluation, we view the evidence in the light most favorable to the verdict, leaving "to the jury the resolution of conflicts or inconsistencies in the evidence, credibility of witnesses, and reasonable inferences to be made from the evidence." *Rodriguez v. State*, 309 Ga. 542, 546 (1) (847 SE2d 303) (2020) (citation and punctuation omitted).

Viewed in that light, the evidence at trial showed that Rouse was Thrift's cousin and best friend. In 1991, the two men worked together pouring concrete for Thrift's father's company. Rouse

2

customarily picked Thrift up at Thrift's house, and they rode to work together. In May 1991, Thrift was married to Rhonda Thrift, and Rouse was having an affair with her. On the afternoon of Friday, May 10, 1991, Rouse and Rhonda met up at the home of a friend. That night, Rhonda and the friend went to a party along with Thrift. When they arrived at the party, Rouse was already there. The Thrifts and the friend left the party about 25 to 30 minutes after arriving and headed to the Thrifts' home, making a couple of stops along the way. The party broke up early on the morning of Saturday, May 11. At around 4:00 that morning, Rouse, who had stayed at the party, was seen sleeping in his car in front of the house where the party took place, but his car was gone by 7:00 a.m.

Thrift, Rouse, and two other men were scheduled to pour concrete at a jobsite at 7:00 a.m. that Saturday morning. After attending a different party, the two other men drove to the Thrifts' house sometime in the early morning hours and slept in their car in the Thrifts' front yard so they would not be late to the job site. The Thrifts' babysitter, who slept on the Thrifts' couch that night,

3

reported hearing Rhonda and Thrift arguing during the night; being awakened later by a loud noise, perhaps the sound of a horn or a loud muffler; and seeing Rouse there when she woke up between 5:00 and 6:00 a.m. Sometime before 7:00 a.m., the two men who were sleeping in their car were awakened by either Thrift or Rhonda, and they left with Thrift, arriving at the job site by 7:00 a.m. Rouse never showed up to work that day.

At around 2:00 p.m. that day, Rouse's car was discovered outside one of the entrances to the Okefenokee Swamp. The car's windows were rolled down, the ignition switch was in the on position, the battery was dead, and the car was out of gas. Rouse's family never saw or heard from him again. In the 20 years following Rouse's disappearance, Thrift told a number of people on numerous occasions that he had killed Rouse by beating him and/or shooting him because Rouse was having an affair with Rhonda. Thrift said he then disposed of Rouse's body in the swamp, sometimes describing Rouse as "gator bait."

Thrift contends that this and other evidence at trial was

4

insufficient to support the verdict because, although Rouse has not been seen by his family since May 11, 1991, his body has never been found, no crime scene was ever discovered to show that Rouse died as the result of any criminal action, and other evidence showed that Rouse disappeared of his own volition.[2] Thrift argues that even giving the appropriate deference to the jury, no rational factfinder could find that Rouse was even dead, much less that he died as the result of criminal conduct, or that it was Thrift who killed him.

"It is of course true that the burden was upon the State to prove the corpus delicti, and to show also that the defendant was the perpetrator of the alleged offense. Both of these elements, however, could be shown by circumstantial as well as direct evidence." *White v. State*, 263 Ga. 94, 96-97 (1) (428 SE2d 789) (1993) (citation and

---

[2] One of Rouse's co-workers testified that the week before Rouse disappeared, Rouse said that he was about to leave and that no one would be able to find him. Rouse explained that he had an upcoming court date with the potential for jail time and he owed people a lot of money. Additionally, on the afternoon before he disappeared, Rouse asked Rhonda never to forget him. Three witnesses testified that they knew Rouse and had seen him after his disappearance. The three witnesses each reported seeing Rouse, or someone who looked like him, after May 11, 1991, but none of those individuals actually spoke with the person they identified as Rouse.

punctuation omitted). See also *Richardson v. State*, 276 Ga. 548, 549 (1) (580 SE2d 224) (2003) (proof beyond a reasonable doubt of the corpus delicti, which means "the body of the crime," may be established by indirect as well as direct evidence). Moreover, "[t]o establish the corpus delicti in a homicide prosecution, the State must prove that a death occurred, but there is no requirement that a dead body be produced." *Richardson*, 276 Ga. at 549 (1).

Here, Thrift stated on a number of occasions to a number of different witnesses that he killed Rouse by beating him, shooting him, or both, and then disposed of his body in the swamp, because Rouse was having an affair with Rhonda. Each of these statements "made not a mere incriminating admission, but a confession, which is direct evidence of his guilt, and this is not, therefore, a purely circumstantial case." *Robinson v. State*, 309 Ga. 729, 731 (1) (a) (848 SE2d 441) (2020) (citation and punctuation omitted) (defendant's statement to jailhouse informant that he killed the victim was a confession and thus direct evidence). See also *Muckle v. State*, 302 Ga. 675, 679 (1) (b) (808 SE2d 713) (2017) (defendant's admission to

6

victim's brother regarding the main facts of felony murder charge constituted a confession).

Thrift's confessions were also corroborated by evidence that Rouse was having an affair with Rhonda; Rouse and Rhonda met up the day before Rouse's disappearance; Thrift and his wife got into an argument in the early morning hours on the day Rouse disappeared; and Rouse and Thrift did not ride to work together, although this was their usual routine. Evidence at trial also showed that Thrift knew about the affair and even believed that his daughter was actually Rouse's biological child. Rouse was seen at the Thrift house on the morning of his disappearance, and Rouse's car was later discovered abandoned outside the entrance to the swamp where Thrift said he dumped Rouse's body. The State introduced evidence that Rouse had close family connections, yet, uncharacteristically, he had failed to contact his family or appear at any family events for more than 20 years. This and other evidence at trial was sufficient to authorize a rational trier of fact to find Thrift guilty of felony murder beyond a reasonable doubt. See *Hinton v. State*, 280 Ga. 811,

814 (1) (631 SE2d 365) (2006) (evidence sufficient to support murder conviction where defendant made various statements implicating himself in victim's murder and the disposal of her body, which was never found, and other evidence corroborated those statements); *Richardson*, 276 Ga. at 549 (1) (evidence sufficient to support murder conviction in absence of body where defendant confessed to victim's murder and other evidence corroborated that confession); *McIlwain v. State*, 264 Ga. 382, 382 (1) (445 SE2d 261) (1994) (defendant's confession along with other evidence sufficient to support murder conviction although victim's body never found).

2. Thrift further contends that the trial court erred in denying his motion for new trial on the general grounds because the verdict was against the weight of the evidence and the principles of equity and was contrary to the evidence. See OCGA §§ 5-5-20 and 5-5-21. However, "the decision to grant or refuse to grant a new trial on the general grounds is vested solely in the trial court." *Bundel v. State*, 308 Ga. 317, 318 (1) (840 SE2d 349) (2020) (emphasis omitted). And "[w]hen a defendant appeals the trial court's denial of a motion for

new trial, an *appellate* court does not review the merits of the general grounds." Id. (emphasis in original). See also *Wilcox v. State*, 310 Ga. 442, 446 (2) (851 SE2d 587) (2020) (declining to review denial of motion for new trial on the general grounds). Instead, this Court's review of a trial court's ruling on the general grounds is limited to sufficiency of the evidence under *Jackson v. Virginia*. See *Lewis v. State*, 296 Ga. 259, 261 (3) (765 SE2d 911) (2014). Because we have already determined that the evidence was sufficient to support Thrift's felony murder conviction, we conclude that this enumeration is without merit.

3. Thrift also argues that the trial court erred by denying his motion for mistrial after the State violated an order by the trial court and improperly placed Thrift's character at issue by introducing testimony from a State's witness that Thrift previously threatened him with a gun.

> A trial court's denial of a motion for mistrial based on the improper admission of bad character evidence is reviewed for abuse of discretion by examining factors and circumstances, including the nature of the statement, the other evidence in the case, and the action taken by the

9

court and counsel concerning the impropriety.

*Graves v. State*, 298 Ga. 551, 555 (3) (783 SE2d 891) (2016) (citation and punctuation omitted).

Before trial, Thrift filed a motion in limine to exclude evidence regarding other alleged crimes pursuant to OCGA § 24-4-404 (b), although the motion did not identify any specific evidence it sought to exclude. Following an abbreviated pretrial motion hearing,[3] the trial court issued an order stating that the State represented that it did not intend to introduce evidence of other alleged crimes, that Thrift's motion thus need not be heard, and that the hearing was vacated. At trial, during the direct examination of one of Thrift's friends, who was called as a witness for the State, the prosecutor asked whether Thrift had talked with the friend about Rouse's disappearance. After the friend said that he and Thrift had spoken about it, the prosecutor asked *where* this conversation occurred.

---

[3] The trial court's order indicates that the hearing on this motion was held on March 18, 2014, but the transcript of that hearing shows that it was adjourned a short time after it began, when the trial court announced that "there's a combination of things going on right now that make it necessary to adjourn these proceedings for today, matters beyond all our control."

Thrift's friend replied that Thrift had a gun in his hand, although he never pointed it at his friend, and said, "I'll kill you like I killed [Rouse] if you tell anybody I f****d a n****r."

Thrift's attorney objected, and during the subsequent discussion outside the jury's presence, he moved for a mistrial on the ground that the State had put Thrift's character at issue by introducing evidence of an unrelated criminal act — e.g., terroristic threats "at the very least." The trial court sustained the objection to the evidence, but denied the mistrial. With the court's permission, defense counsel renewed his motion for a mistrial outside the presence of the jury, rather than wait until after the curative instruction was given, and the trial court again denied the motion. When the jury returned, the trial court instructed the jurors to disregard any testimony regarding a threat by Thrift or his possession of a gun. Thrift did not raise a specific objection to the trial court's curative instruction.

(a) Thrift argues that the State intentionally introduced this testimony in contradiction of its earlier representation that it would

11

not introduce evidence of other crimes. He further asserts that this testimony was prejudicial as it was the only evidence purporting to show that Thrift had committed a violent act and it was particularly harmful given the "circumstantial nature" of the State's case. Thrift asserts that no curative instruction could overcome the prejudice that this testimony caused.

However, the record does not support Thrift's assertion that the State intentionally sought to introduce this evidence as a prior criminal act. It is apparent that the witness's answer regarding *what* Thrift said was nonresponsive to the prosecutor's question about *where* his conversation with Thrift occurred. The trial court took immediate corrective action in response to the witness's testimony, instructing the jury to disregard any mention of a threat or a gun, and Thrift's trial counsel did not object to that instruction. Under these circumstances, we conclude that the trial court did not abuse its discretion in denying Thrift's motion for mistrial. See, e.g., *Graves*, 298 Ga. at 555 (3) (no abuse of discretion in denying mistrial based on nonresponsive answer to prosecutor's question); *Walker v.*

12

*State*, 282 Ga. 703, 705 (2) (653 SE2d 468) (2007) ("[A] nonresponsive answer that impacts negatively on a defendant's character does not improperly place his character in issue." (citation and punctuation omitted)); *Hansley v. State*, 267 Ga. 48, 49 (3) (472 SE2d 305) (1996) (same).

(b) Thrift further asserts that the trial court erred by denying his motion for a mistrial after the prosecutor referenced the friend's inadmissible testimony during closing argument.

During the State's closing, the prosecutor stated, "The only person you've heard testimony about that was dangerous with a gun was Craig Thrift." Thrift's attorney moved for a mistrial arguing that this statement was improper because it was based on the excluded testimony that Thrift had threatened his friend with a gun. The prosecutor countered, however, that the argument was based on testimony from another witness, one of Thrift's co-workers, who testified that Thrift said on a number of occasions that he shot Rouse before throwing his body in the swamp.

It is well settled that "a prosecutor is granted wide latitude in

13

the conduct of closing argument, the bounds of which are in the trial court's discretion; within the scope of such latitude is the prosecutor's ability to argue reasonable inferences from the evidence[.]" *Styles v. State*, 309 Ga. 463, 470 (4) (847 SE2d 325) (2020) (citation and punctuation omitted). The prosecutor's argument was a reasonable inference drawn not only from the co-worker's testimony, but also from the testimony of two other witnesses who each testified that Thrift said he shot and killed Rouse. Therefore, the trial court did not abuse its discretion in denying Thrift's motion for a mistrial on this ground.[4]

4. Thrift next contends that the trial court erred by denying Thrift's motion for mistrial after the prosecutor placed Thrift's character in issue in violation of the motion in limine order by stating in closing argument: "You heard from Tonya Searcy, another

---

[4] Thrift argues on appeal that the State had the burden to make sure that its argument could not be misinterpreted as referring to the stricken testimony, but it failed to do so. However, Thrift did not raise this argument at trial; thus, he has waived the issue for appellate review. See *Corley v. State*, 308 Ga. 321, 326 (5) (840 SE2d 391) (2020); *Gates v. State*, 298 Ga. 324, 328-29 (4) (781 SE2d 772) (2016) (alleged errors arising from remarks during closing argument not raised below are not subject to plain error review).

person in Camden County, who was a known associate of [Thrift], knew him well. . . . And she testified to his intimidation and that she was scared of him and that he had admitted that he had killed his cousin." Thrift's attorney moved for a mistrial on the ground that the State was trying to introduce evidence of terroristic threats or was arguing an extrinsic criminal act. The trial court denied the motion.

The trial court properly exercised its discretion in denying Thrift's motion for mistrial on the ground asserted. The prosecutor did not state that Thrift had threatened the witness but only asserted that the witness found Thrift intimidating. Moreover, although Thrift notes, and the State concedes, that Searcy never testified that she was intimidated by or scared of Thrift and, in fact, said that she continued to socialize with him even after he admitted to killing Rouse, Thrift's sister-in-law, who testified right after Searcy, told the jury that Thrift "intimidate[d]" the sister-in-law. Also, Thrift's wife Robyn Thrift[5] testified that Thrift told her about

_____

[5] Thrift married Robyn after divorcing Rhonda.

Rouse's murder "to keep [her] in line, to keep [her] afraid." Therefore, even though the prosecutor misidentified the source of the evidence,[6] Thrift's counsel did not object to the misidentification, and this improper identification likely had little impact on the verdict because the argument that Thrift had intimidated *a* witness was based on evidence admitted at trial. See *Styles*, 309 Ga. at 470 (4). Therefore, the trial court did not abuse its discretion in denying a mistrial on this ground.

5. Thrift also argues that the trial court erred by denying his counsel's repeated and continuing objections to the State's introduction of irrelevant testimony regarding personal matters involving Rouse's family in an attempt to incite the passions of the jury.

"Decisions regarding relevance are committed to the sound

---

[6] Thrift also asserts on appeal that the prosecutor's argument was not based on evidence at trial because Searcy never testified to being scared or intimidated by Thrift, but rather the argument was part of the State's pattern of improperly prejudicing the jury, by painting Thrift as a violent person who threatened and intimidated others. However, Thrift did not object on this basis at trial, and it is therefore waived for appellate review. See *Corley*, 308 Ga. at 326 (5).

discretion of the trial court." *Smith v. State*, 299 Ga. 424, 429 (2) (b)

(788 SE2d 433) (2016).

> To evaluate relevancy, this Court relies on OCGA § 24-4-401 ("Rule 401"), which defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

*Lofton v. State*, 309 Ga. 349, 355 (2) (b) (846 SE2d 57) (2020) (citation and punctuation omitted). See also *Ragan v. State*, 299 Ga. 828, 832 (3) (792 SE2d 342) (2016). "The standard for relevant evidence is a 'liberal one,' and such evidence is generally admissible even if it has only slight probative value." *McClain v. State*, 303 Ga. 6, 10 (3) (810 SE2d 77) (2018).

> However, relevant evidence may be excluded under OCGA § 24-4-403 ("Rule 403") "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The major function of Rule 403 is to exclude matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.

*Lofton*, 309 Ga. at 355 (2) (b) (citation and punctuation omitted).

Therefore, we have concluded that "the exclusion of relevant evidence under Rule 403 is an extraordinary remedy that should be used only sparingly." *Pike v. State*, 302 Ga. 795, 799 (3) (809 SE2d 756) (2018) (citation and punctuation omitted).

As previously noted, the State had the burden of showing that "[Rouse] is dead, that [his] death was caused by violence or the direct criminal agency of another human being, and that [Thrift] caused the death in the manner charged." *Sheffield v. State*, 281 Ga. 33, 34 (1) (635 SE2d 776) (2006) (citation and punctuation omitted). In the absence of a body, the State was forced to present other evidence to carry this burden.

At trial, the State introduced the testimony of Rouse's brother, Shannon, that Rouse had close ties to his large extended family, who all lived in the same area as Rouse at the time of his disappearance. Although Rouse spoke with his family regularly and customarily attended family events, his family had not seen or heard from him since May 11, 1991. Thrift's attorney objected on the ground that Shannon's testimony was irrelevant, prejudicial, and intended "to

18

substitute sympathy for evidence" after the prosecutor asked Shannon about his mother and other family members who passed away in the years since Rouse's disappearance and whether Rouse had visited them during their extended illnesses or attended their funerals. The trial court overruled Thrift's objections but later granted Thrift a continuing objection to this line of testimony.[7]

We conclude that Shannon's testimony regarding Rouse's 20-year absence; his lack of communication with his family, with whom he had previously shared close relations; and his failure to attend family events he usually attended in the past had the tendency to make the fact of Rouse's death (as opposed to his voluntary

---

[7] Thrift contends on appeal that the evidence of all the intervening family events was an impermissible form of victim impact evidence introduced into the merits of the trial. However, he never objected on this basis at trial and he does not argue, and has not carried his burden of demonstrating, plain error on this ground on appeal. See *Denson v. State*, 307 Ga. 545, 547-48 (2) (837 SE2d 261) (2019) ("To establish plain error, [the appellant] must point to an error that was not affirmatively waived, the error must have been clear and not open to reasonable dispute, the error must have affected his substantial rights, and the error must have seriously affected the fairness, integrity, or public reputation of judicial proceedings." (citation and punctuation omitted)); *Reed v. State*, 304 Ga. 400, 404 (2) (819 SE2d 44) (2018) (no reversible error where appellant fails to show even one of the mandatory prongs of the plain error test).

disappearance, as the defense contended) more probable, and thus it was relevant within the meaning of Rule 401 to a fact that was of consequence to the case. Additionally, although Shannon testified to a number of family events that occurred over the 20-year period for which Rouse was absent, his testimony merely recited the events and did not belabor them or address the emotional impact of Rouse's absence on the family. Under these circumstances, we discern no abuse of discretion in the trial court's determination that the probative value of Shannon's testimony was not outweighed by the danger of unfair prejudice. Cf. *Benson v. State*, 294 Ga. 618, 620-21 (1) (754 SE2d 23) (2014) (concluding under former Evidence Code that "in cases in which a victim's body has not been found, evidence that the victim was a person with personal relationships that uncharacteristically seemed to have been abandoned supports a finding that the victim has died" (citation and punctuation omitted)); *Hinton*, 280 Ga. at 816 (4) (same).

6. Thrift also asserts that the trial court erred by allowing the State to introduce irrelevant, prejudicial evidence that constituted a

comment on his exercise of his constitutional right to remain silent and by denying Thrift's motion for a mistrial after the State elicited such evidence. We discern no abuse of discretion in the trial court's admission of the evidence and denial of a mistrial because the disputed evidence was not a comment on Thrift's invocation of the right to remain silent. See *Jones v. State*, 305 Ga. 750, 755 (3) (827 SE2d 879) (2019) (whether to grant a mistrial based on improper comment on defendant's invocation of the right to remain silent is within the trial court's discretion, which an appellate court will not disturb "unless there is a showing that a mistrial is essential to the preservation of the right to a fair trial" (citation and punctuation omitted)).

Before trial testimony began, Thrift's attorney requested a hearing on the voluntariness of a statement Thrift made to a former chief deputy at the Ware County Sheriff's Office. After hearing argument and receiving evidence as to the admissibility of the statement, the trial court found that Thrift was not in custody when he asked the deputy if Rouse's body had been found and ruled that

21

the State would be allowed to introduce evidence of Thrift's question about the body. The trial court further instructed the prosecutor, "you may go so far as to say that the conversation ended at that point, but you cannot say that he refused to talk after that or that he invoked his right to silence." The trial court then ruled that the probative value of this evidence outweighed the prejudicial impact.

At trial, the deputy testified that he asked Thrift to come to his office in connection with his investigation into Rouse's disappearance, and Thrift did so. The prosecutor then asked, "During your conversation with Mr. Thrift . . . , did you request to have additional conversation with him?" After the deputy replied, "I did," the prosecutor began to ask, "What was his response to —" when Thrift's attorney asked to approach the bench. Thrift's counsel then moved for a mistrial, stating "he's getting into whether my client refused to have further statements . . . contrary to the Court's order." The trial court denied the mistrial and reiterated its earlier ruling, making sure the deputy understood that ruling. When the examination continued, the prosecutor asked the deputy what

Thrift's response was to his question, and the deputy replied "his response to me was did I have a body and I said no." The prosecutor then asked, "And that was the end of the conversation?" The deputy replied, "Yes, sir, that ended it." Thrift's counsel renewed his motion for mistrial, which was denied.

Contrary to Thrift's argument, this testimony complied with the trial court's initial ruling, which properly excluded any comment about Thrift's invocation of his rights. Because the State did not elicit testimony that Thrift refused to answer any of the deputy's questions, nor was there any testimony as to who ended the conversation, the deputy's testimony did not implicate Thrift's invocation of his right to remain silent. For the same reason, there is no merit to Thrift's argument that any probative value in the deputy's testimony was outweighed by the prejudice resulting from the deputy's testimony that the conversation ended after Thrift asked a question about the body. Therefore, the trial court did not abuse its discretion in admitting the evidence and denying Thrift's motion for mistrial on this ground.

7. Thrift contends that the trial court erred in denying his motion for mistrial after the State improperly asked a law enforcement officer whether another witness opined as to whether Thrift was capable of killing another person.

After the witness in question testified for the State, the defense presented testimony from a captain with the Ware County Sheriff's Department to impeach the witness. On cross-examination, the prosecutor asked the captain, "Did you ask [the witness] is [Thrift] capable of killing somebody and she said yes?" Thrift's attorney objected and moved for a mistrial. The trial court directed the captain not to answer the question. During the subsequent bench conference, Thrift's attorney objected on the ground that "that's just ridiculous, absurd opinion evidence. It has nothing to do with anything. It's a totally improper question."[8] He then asked for the jury to be instructed to forget the question and for the prosecutor to

---

[8] Although Thrift argues on appeal that the question was improper because it placed his character at issue, his counsel failed to object on this basis at trial, and he does not argue, and has not carried his burden of demonstrating, plain error on this ground on appeal. See *Reed*, 304 Ga. at 404 (2).

24

be rebuked. After hearing argument, the trial court sustained the objection, but denied the motion for mistrial. Back in front of the jury, the trial court sustained the objection and asked the prosecutor if he had any more questions. The prosecutor replied in the negative, and the witness was excused. Therefore, the witness was never allowed to answer the prosecutor's question. The trial court did not issue a curative instruction, nor did it rebuke the prosecutor.

Although the State asked a question that could have elicited improper testimony, Thrift's counsel immediately objected, and the trial court sustained counsel's objection before the witness could answer. Pretermitting whether this unanswered question amounted to an improper prejudicial statement under OCGA § 17-8-75,[9] we find that any error by the trial court in failing to rebuke the prosecutor or to give a curative instruction as required under that

---

[9] OCGA § 17-8-75 provides:

> Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same. On objection made, the court shall also rebuke the counsel and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the prosecuting attorney is the offender.

statute was harmless because a statement that one witness believed Thrift was capable of killing somebody added little to the evidence from a number of other witnesses that Thrift admitted on multiple occasions that he *had* killed Rouse. See *Davenport v. State*, 309 Ga. 385, 391 (3) (846 SE2d 83) (2020); *Anglin v. State*, 302 Ga. 333, 336 (2) (806 SE2d 573) (2017) ("[T]he erroneous admission of hearsay is harmless where substantial, cumulative, legally admissible evidence of the same fact is introduced.").

8. Thrift also argues that the trial court erred by restricting his counsel's cross-examination of a State's witness concerning statements Rouse made prior to his disappearance that he was going to disappear because he owed money for drugs.

During the cross-examination of one of the State's witnesses, who was a friend of both Rouse and Thrift, Thrift's attorney elicited testimony that Rouse told the witness approximately four to five times during the week before May 11, 1991 that he was going to go missing and that nobody would ever find him. When defense counsel asked if Rouse said why he was leaving town, the State objected and

26

asked to approach. The prosecutor stated that he anticipated that Thrift's attorney was trying to bring in improper character evidence against the victim. Rouse's expressed reasons for leaving town were to avoid going to jail at a court date the following Monday and because he owed some people money for drugs. The defense made a proffer that the purpose for the testimony was to explain Rouse's stated motive for disappearing, not for the truth of the matter stated. The trial court allowed the witness to testify that Rouse told him Rouse was leaving because Rouse faced possible jail time at a court date the following Monday and because Rouse owed a lot of money, but the trial court excluded any reference to the fact that the money was owed for drugs.

We see no abuse of discretion. "Like most questions about the admissibility of evidence, the scope of cross-examination is committed in the first instance to the sound discretion of the trial court, and we review a limitation of cross-examination only for an abuse of that discretion." *Lucas v. State*, 303 Ga. 134, 136-37 (2) (810 SE2d 491) (2018). Here, the trial court acted within its discretion in

allowing Thrift to present evidence that Rouse disappeared voluntarily because he did not want to serve jail time and because he owed a lot of money, without further impugning Rouse's character by presenting evidence that the debt in question was for drugs. See OCGA §§ 24-4-404 and 24-4-405.[10]

9. Thrift further asserts that the trial court erred by denying his motions under OCGA § 24-8-807[11] ("Rule 807") to introduce

---

[10] Although Thrift also argues that the State opened the door to the evidence that Rouse owed money for drugs when it introduced Shannon's testimony regarding what a good son and grandson Rouse had been, he did not make this argument at trial, nor does Thrift argue, or carry his burden of demonstrating, plain error on this ground on appeal. See *Reed*, 304 Ga. at 404 (2).

[11] OCGA § 24-8-807 provides:

A statement not specifically covered by any law but having equivalent circumstantial guarantees of trustworthiness shall not be excluded by the hearsay rule, if the court determines that:

(1) The statement is offered as evidence of a material fact;

(2) The statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and

(3) The general purposes of the rules of evidence and the interests of justice will best be served by admission of the statement into evidence.

However, a statement may not be admitted under this Code section unless the proponent of it makes known to the adverse party, sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

evidence of out-of-court statements given to law enforcement by two witnesses Thrift asserted were unavailable for trial. Thrift sought to introduce a 1991 out-of-court statement by one witness regarding a conversation she had after Rouse's disappearance with an individual she later identified as Rouse and a 1997 statement given by the other witness about a conversation she had with an individual who said that he and another man killed Rouse and disposed of his body.

> Rule 807 sets out the residual hearsay exception, which is
>
> to be used very rarely and only in exceptional circumstances, and only when there exists certain exceptional guarantees of trustworthiness and high degrees of probativeness and necessity. . . . A trial court's decision to admit [or exclude] hearsay evidence under Rule 807 is reviewed for an abuse of discretion. This Court is particularly hesitant to overturn a trial court's admissibility ruling under the residual hearsay exception absent a definite and firm conviction that the court made a clear error of judgment in the conclusion it reached based upon a weighing of the relevant factors.

*Davenport*, 309 Ga. at 390 (3) (citations and punctuation omitted). See also *State v. Hamilton*, 308 Ga. 116, 125 (4) (839 SE2d 560) (2020) (trial court's decision to admit hearsay under Rule 807 reviewed for an abuse of discretion, considering the totality of the

29

circumstances). The requisite guarantees of trustworthiness

> must be equivalent to cross-examined former testimony, statements under a belief of impending death, statements against interest, and statements of personal or family history. These categories of hearsay have attributes of trustworthiness not possessed by the general run of hearsay statements that tip the balance in favor of introducing the information if the declarant is unavailable to testify. And they are all considered sufficiently trustworthy not because of the credibility of the witness reporting them in court, but because of the circumstances under which they were originally made.

*Jacobs v. State*, 303 Ga. 245, 249 (2) (811 SE2d 372) (2018) (citations and punctuation omitted). Moreover, Rule 807 "has a built-in requirement of necessity, and its probativeness requirement necessitates, by its plain terms, some determination by the court that the statement at issue is 'more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts.'" *Hamilton,* 308 Ga. at 126 (4) (b) (citation omitted) (quoting OCGA § 24-8-807 (2)).

(a) Prior to trial, Thrift filed a notice of intent under Rule 807 to introduce evidence of the first witness's unsworn, out-of-court

30

statement,[12] given to law enforcement on May 15, 1991, that between 9:30 and 10:30 p.m. on May 11, 1991, when the witness was working at a convenience store in Florida, she spoke to a young, male customer. The young man said that he had worked nearby pouring concrete foundations for the apartments under construction down the road from the store. The witness told police that she later recognized the man as Rouse after seeing a missing person poster in the store window. The witness did not know Rouse, and thus she did not know he was a concrete worker. The trial court conducted a pretrial hearing on the admissibility of the witness's statement and later heard argument on the issue during trial before ruling that the evidence was not admissible.

We find no abuse of discretion in the trial court's decision to exclude this witness's statement. First, Thrift failed to show the requisite guarantees of trustworthiness to support the statement's admission. The witness's statement was given to, and put in written

---

[12] Thrift's counsel asserted that he had been unable to locate this witness.

form by, law enforcement. In that statement, the transcribing officer noted that law enforcement had investigated the witness's information—including by showing Rouse's picture to workers at the apartment construction site, where no one recognized Rouse—but had been unable to corroborate it. Although Thrift points to other circumstances—the witness's apparent lack of interest in the matter, the temporal proximity of the statement to Rouse's disappearance, and the statement that the man said he had poured concrete despite the witness's apparent unfamiliarity with Rouse's work history—to argue that the statement was trustworthy, we conclude that, considering the totality of the circumstances, the trial court was authorized to find that these factors alone did not provide sufficient guarantees of trustworthiness to support the statement's admission.

(b) Thrift also filed a notice of intent under Rule 807 to introduce the statement of a second witness, after introducing her obituary to show she was deceased. This witness made her statement in a 1997 interview with law enforcement, in which she

32

said that on one occasion, when she and her then-husband were at her house drinking beer with a friend, the friend stated that he and another man killed Rouse "and fed him to the gators." During the pretrial argument addressing this matter, Thrift's counsel represented that he intended to call the friend who made this claim as a witness at trial not for the purpose of showing the truth of the statement but only to show that someone else made wild statements about Rouse. Thrift's counsel said that he only intended to introduce the witness's statement if the friend denied telling the witness that he killed Rouse. The trial court reserved ruling on the admissibility of the witness's statement until after the friend testified. After further discussion at trial regarding the admission of this evidence, the trial court ruled, without explanation, that the witness's statement was inadmissible.

Thrift points to no facts or circumstances surrounding this witness's statement that he contends provide guarantees of its trustworthiness, and he failed to demonstrate at trial that the witness's statement was more probative than other evidence that he

33

could produce at trial for the stated purpose of showing that someone other than Thrift made a drunken boast about killing Rouse.[13] Accordingly, we discern no abuse of discretion by the trial court in excluding this witness's statement.

10. Thrift argues that the trial court's errors, when considered collectively, require a new trial because the errors allowed the State to introduce improper evidence to bolster its case while also preventing Thrift's ability to introduce relevant and admissible evidence in his defense. See *State v. Lane*, 308 Ga. 10, 17 (1) (838 SE2d 808) (2020) (adopting the cumulative error doctrine). See also *United States v. Benjamin*, 958 F3d 1124, 1137 (II) (F) (11th Cir. 2020) ("The cumulative error doctrine provides that an aggregation of non-reversible errors . . . can yield a denial of the constitutional right to a fair trial, which calls for reversal." (citations and

---

[13] When the trial court revisited the issue during the trial, an unidentified person stated on the record that he believed that the friend was dead, but the person said that he did not have anything to prove the friend's death. Thrift's counsel made no further argument supporting the admission of the witness's statement based on the apparent unavailability of the friend's testimony and asserted no basis other than Rule 807 for the statement's admission. The defense never called the friend as a witness.

punctuation omitted)). However, in order to establish a claim of cumulative error, a defendant must show, inter alia, that "at least two errors were committed in the course of the trial." *Lane*, 308 Ga. at 21 (4) (citation and punctuation omitted). Because we have found only one potential error at trial on the grounds asserted by Thrift, which error we determined to be harmless, Thrift's claim of cumulative error fails.

*Judgment affirmed. Melton, C. J., Nahmias, P. J., and Boggs, Peterson, Bethel, and Ellington, JJ., concur. Warren, J., not participating.*

Decided December 7, 2020.

Murder. Ware Superior Court. Before Judge Gillis.
*Timothy C. Head, Jr.*, for appellant.
*George E. Barnhill, District Attorney, Michelle C. McIntire, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Elizabeth Rosenwasser, Assistant Attorney General*, for appellee.

35